Virginia **RAND**, Petitioner,

v.

**STATE OF ARKANSAS.**
Respondent.

Civ. A. No. 428.

United States District Court.
W. D. Arkansas,
Fayetteville Division.

Feb. 16, 1961.

Rex Perkins, Fayetteville, Ark., Jeff Duty, Rogers, Ark., for petitioner.

Ted P. Coxsey, Berryville, Ark., for respondent.

JOHN E. MILLER, Chief Judge.

On February 9, 1961, the petitioner, Mrs. Virginia Rand, filed her petition for the removal to this court of the above proceeding from the Circuit Court of Benton County, Arkansas.

■ To date no motion to remand has been filed by the State of Arkansas, but it is the duty of a court to ask and answer for itself the question whether it has jurisdiction. Westark Production Credit Ass'n v. Fidelity & Deposit Co., D.C.W.D.Ark.1951, 100 F.Supp. 52, 56.

Rule 12(b) (2) of the Fed.R.Crim.P., 18 U.S.C.A., provides:

"* * * Lack of jurisdiction or the failure of the indictment or information to charge an offense shall be noticed by the court at any time during the pendency of the proceeding."

■ Lack of jurisdiction of a federal trial court of the subject matter of litigation cannot be waived by the parties or ignored by a federal appellate court. Thus it is the duty of this court to determine at the outset whether it has jurisdiction of the subject matter of the litigation. Title 28 U.S.C.A. § 1447(c);

Kern v. Standard Oil Co., 8 Cir., 1956, 228 F.2d 699.

Mrs. Rand was indicted on August 29, 1959, by a Grand Jury of Benton County and charged with the crime of murder in the second degree. Ark.Stat.Ann., Secs. 41–2201 and 41–2206 (1947). On November 20, 1959, the petitioner was placed on trial in the Benton Circuit Court. The trial resulted in a verdict and judgment of guilty of murder in the second degree, and a sentence of 8 years in the Arkansas Penitentiary was assessed. The case was appealed to the Arkansas Supreme Court, and on December 12, 1960, the Supreme Court reversed the case on the ground that inadmissible evidence had been introduced. Rand v. State, Ark., 341 S.W.2d 9.

The petitioner alleges that she is denied and cannot enforce in the courts of the State of Arkansas, or of the Fourth Judicial District of the State of Arkansas, the rights secured to her by the Constitution and laws of the United States providing for due process of law and equal civil rights of citizens of the United States. The specific allegations in the petition are contained in paragraphs numbered 7 through 11, and read as follows:

"7. Petitioner alleges that it is absolutely impossible for her to obtain the fair and impartial trial to which she is entitled to under the Due Process of Law clause of Amendment No. 14 to the Constitution of the United States. That said fair and impartial trial cannot be had within the Fourth Judicial District of Arkansas. That under the Constitution and Statutes of the State of Arkansas this Petitioner is denied such right and privilege and cannot enforce such right and privilege in that the Constitution and Statutes of the State of Arkansas specifically bar a change of venue from a Judicial District, and under the holdings of the Supreme Court of Arkansas a defendant is barred from such change. That a fair and impartial trial is a privilege to

which this petitioner, as a citizen of the United States, is entitled to receive. That such denial of a fair and impartial trial amounts to a denial of due process.

"8. Petitioner states that such prejudice against the defendant and petitioner, has been generated within the Fourth Judicial District, as to amount to a complete denial of the civil rights and equal protection to which this petitioner is entitled to. That this case has been so publicized throughout the Fourth Judicial District as to create a mob feeling against this petitioner. That the Constitution and Statutes of the State of Arkansas do not afford a remedy to this Petitioner or afford to her relief in this cause. That this petitioner has, in effect, been 'singled out' and is denied the equal protection of law to which a person charged with crime is entitled to. That she has no remedy in the Courts of the State of Arkansas to enforce said right.

"9. Petitioner states that in the trial of this cause on the ——— day of ——— 1959 inadmissible and incompetent and inflammatory testimony was deliberately introduced on behalf of the State of Arkansas and said testimony and evidence was quoted and distributed over the Fourth Judicial District of Arkansas. That such testimony was intended to inflame juries and the people of the Fourth Judicial District and such was its effect. That the effect of such testimony remains.

"10. Petitioner states that on the 12th day of December 1960 the cause entitled Virginia Rand, Appellant, v. The State of Arkansas, Appellee, was, by the Supreme Court of Arkansas, reversed. That said reversal was unqualified and said case was not remanded, according to the opinion in said case No. 4977, for a new trial. That said cause was not remanded, according to the opinion, to the Benton Circuit Court. That the Mandate filed in this cause in the Benton Circuit Court, under the authority of the said highest court within the State of Arkansas purports to remand the cause. That said mandate is in conflict with said opinion and judgment of the said Supreme Court. That the action of the Benton Circuit Court in attempting to force this petitioner to trial *in* a denial of due process. That the petitioner, under the facts set forth above, has no remedy in the courts of the State of Arkansas to enforce her right to due process and equal protection.

"11. Petitioner alleges that it is impossible for her to procure the equal protection which the law places around those accused of crime in the said Fourth Judicial District of Arkansas."

The law has long been established that there is no common-law right to remove an action from a state court to a federal court, and removal may be had only as authorized by an act of Congress. This rule is stated in 45 Am.Jur., Removal of Causes, Sec. 3, as follows:

"There is no common-law right of removal of a cause from a state to a United States court. The right exists only by virtue of and to the extent authorized by act of Congress. It cannot rest on the mere convenience of the parties, nor can it be exercised in any case not falling within the terms of the act authorizing it. So, a suit commenced or pending in a state court must remain there unless and until cause is shown under some act of Congress for its transfer to a Federal court and proper proceedings to remove it are taken."

In 1 Moore's Federal Practice, Sec. 0.60[9] (2d Ed. 1960), it is noted:

" * * * The right to remove an action from a state court to the federal district court is a statutory right; and under the present removal statutes only a defendant can

remove. In some situations removal is broader, in others narrower, than original jurisdiction, although, in general, removal is keyed to original jurisdiction." Shamrock Oil & Gas Corp. v. Sheets, 1941, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214.

The petitioner does not specifically allege which of the removal statutes is relied upon to confer jurisdiction on this court. The general removal statute, 28 U.S.C.A. § 1441, is not applicable since it is specifically limited to civil actions. However, it appears from a reading of the petition that the petitioner seeks to rely on 28 U.S.C.A. § 1443, which provides:

"Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

"(1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;

"(2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law."

Section 1443 is discussed in 2 Cyc. of Fed. Procedure, Secs. 3.81 and 3.82. In Section 3.81 it is stated:

"In conferring the right of removal of causes against persons denied civil rights, it was intended to protect against state action and that alone. In other words the statute has reference to a constitutional or legislative denial of equal rights, or an inability to enforce them resulting therefrom. It is only when some state law, ordinance, regulation or custom hostile to these rights is alleged to exist that a removal can be had under this provision, and defendant in the action or prosecution in the state court cannot have the cause removed under this provision where it does not appear that the constitution or laws of the state deny or prevent him from enforcing in the judicial tribunals of such state his equal rights as secured to him by the Federal Constitution and laws. If a state law impairs equal rights so guaranteed to defendant, however, the right of removal exists, as where laws in relation to grant and petit juries discriminate against persons of certain races in violation of the United States Constitution and laws. An alleged inequality of position before the courts of the state as between plaintiff and defendant, arising from the fact that the plaintiff is a state and the defendant an individual, was held to be no denial of equal civil rights within the meaning of the removal provision under discussion. State laws against 'bookmaking' and 'pool-selling' do not work a denial of defendant's equal civil rights so as to warrant the removal of a prosecution against him for such offense, where they do not, as claimed by defendant, subject white persons who make, register and record bets and wages on horse races to one kind of punishment and penalty, and other persons to some other kind, contrary to federal law."

In Section 3.82 it is stated:

" * * * The removal provision under consideration does not contemplate a removal where neither the constitution nor laws of the state deny the litigant his civil rights, but where there is a criminal misuse or violation of the state law by some subordinate officer which results in depriving the litigant of the rights which the state law accords to him. Alleged existence of race prejudice, interfering with a fair trial, is not ground for removal, where the preju-

dice cannot be attributed to the state constitution or laws. * * * "

■ It is therefore apparent that to justify a removal under 28 U.S.C.A. § 1443, the petitioner must show a denial or inability to enforce his civil rights which results from the constitution or laws of the state, and it is only when such hostile state constitutional provisions or state legislation exist which interfere with the party's right to defense that he can have the case removed to a federal court. Commonwealth of Kentucky v. Powers, 1906, 201 U.S. 1, 26 S. Ct. 387, 50 L.Ed. 633. See generally 45 Am.Jur., Removal of Causes, Sec. 109.

The primary contention advanced by the petitioner in the instant case is that a fair and impartial trial cannot be had in Benton County or within the Fourth Judicial District of the State of Arkansas, because the case has been so publicized throughout that area of the State as to create strong local prejudice, which the petitioner refers to as "a mob feeling" against her. Similar contentions were advanced by petitioners in Snypp v. State of Ohio, 6 Cir., 1934, 70 F.2d 535, and Lamson v. Superior Court, D.C.N.D.Cal.1935, 12 F.Supp. 812. In the Snypp case the petition for removal alleged that Snypp was being deprived of his civil rights because he could not obtain justice in any of the state courts in which his case might be tried because of prejudicial and local influences. The court held that this allegation, if susceptible of proof, would not constitute a discrimination by the state courts affecting the civil rights of the petitioner. The same result was reached in the Lamson case.

In paragraph 7 of the petition quoted above, Mrs. Rand alleges that she is denied the right to a fair and impartial trial because the constitution and statutes of the State of Arkansas specifically bar a change of venue from one judicial district to another.

The constitutional provision in question is found in Article 2, Sec. 10, of the Arkansas Constitution, and reads as follows:

"In all criminal prosecutions the accused shall enjoy the right to a. speedy and public trial by impartial jury of the county in which the· crime shall have been committed;. provided that the venue may be· changed to any other county of the· judicial district in which the indict-· ment is found, upon the application of the accused, in such manner as· now is, or may be, prescribed by law; and to be informed of the nature and cause of the accusation· against him, and to have a copy thereof; and to be confronted with. the witnesses against him; to have· compulsory process for obtaining· witness in his favor, and to be heard; by himself and his counsel."

The statutory procedure for obtaining a change of venue appears in Ark.. Stat.Ann., Sec. 43–1501 (1947), et seq. The Supreme Court of Arkansas has held. that venue in a criminal case cannot be· changed to a county outside the judicial circuit in which the indictment is found. State v. Flynn, 1876, 31 Ark. 35. Benton County is located within the Fourth Judicial District of the State of Arkansas, which also includes Washington, Madison and Carroll Counties. The petition does not allege that the petitioner here, Mrs. Rand, has filed an application for a change of venue to another county within the Fourth Judicial District.

■ This court is of the opinion that the Arkansas constitutional provision providing for a speedy and public trial by an impartial jury and for a change of venue within the Judicial District adequately protects the petitioner's constitutional rights to a fair and impartial trial. Compare State of Texas v. Dorris, D.C.S.D.Tex.1958, 165 F.Supp. 738.

The petitioner does not claim that the constitutional provision of Arkansas, hereinbefore set forth, or the statutes outlining the procedure to be followed to obtain a change of venue in a criminal

case pending in a state court, are facially contrary to the 14th Amendment to the Constitution of the United States. The applicable provision of the Constitution of Arkansas and the statutes are of general application, and do not in themselves impair any right guaranteed by the Constitution of the United States, nor do they deny or prevent a defendant from enforcing in the designated judicial tribunals of Arkansas his rights as secured to him by the federal Constitution. The gist of the contention is that the wide publicity attending the first trial in the Benton County Circuit Court and the introduction of inadmissible and inflammatory testimony has so inflamed prospective jurors and, in general, the citizens of the Fourth Judicial District, that it is impossible to obtain a fair trial within the Fourth Judicial District of Arkansas. That if she is placed upon trial in any county in said Judicial District, she will be deprived of her liberty without due process of law, and will be denied equal protection of the law.

As stated in 2 Cyc. of Fed. Procedure, Sec. 3.82:

"Denials of equal rights resulting from the constitution or laws of a state must be distinguished from those caused by the acts of judicial or administrative officers. The wrong in the one case is the direct and necessary result of the state law, of its necessary operation proprio vigore, while in the other it results from the administration of the law. In the former case, the action is removable, and in the latter it is not."

No doubt the petitioner anticipates difficulties in obtaining a fair and impartial trial because, as she claims, of inflamed public sentiment, but that is a question of fact to be determined by the trial court having jurisdiction to try the offense with which she is charged. If the constitutional rights of the petitioner are denied or invaded by the court, appellate jurisdiction can and will correct the wrong.

It is incumbent upon the state court to afford the petitioner a fair and impartial trial, and if it fails to discharge this obligation, a remedy may be obtained by appeal to the Arkansas Supreme Court or ultimately to the Supreme Court of the United States. See Gibson v. State of Mississippi, 1896, 162 U.S. 565, 16 S.Ct. 904, 40 L.Ed. 1075.

In Brown v. Mississippi, 1936, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682, the court, beginning at page 285 of 297 U.S., at page 464 of 56 S.Ct., said:

"The State is free to regulate the procedure of its courts in accordance with its own conceptions of policy, unless in so doing it 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' Snyder v. [State of] Massachusetts, supra; Rogers v. Peck, 199 U.S. 425, 434 [26 S.Ct. 87, 50 L. Ed. 256]. The State may abolish trial by jury. It may dispense with indictment by a grand jury and substitute complaint or information. Walker v. Sauvinet, 92 U.S. 90 [23 L.Ed. 678]; Hurtado v. [People of State of] California, 110 U.S. 516 [4 S.Ct. 111, 28 L.Ed. 232]; Snyder v. [State of] Massachusetts, supra. But the freedom of the State in establishing its policy is the freedom of constitutional government and is limited by the requirement of due process of law. Because a state may dispense with a jury trial, it does not follow that it may substitute trial by ordeal. The rack and torture chamber may not be substituted for the witness stand. The state may not permit an accused to be hurried to conviction under mob domination —where the whole proceeding is but a mask—without supplying corrective process. Moore v. Dempsey, 261 U.S. 86, 91 [43 S.Ct. 265, 67 L.Ed. 543]. The State may not deny to the accused the aid of counsel. Powell v. [State of] Alabama, 287 U.S. 45 [53 S.Ct. 55, 77 L.Ed. 158]. Nor may a State, through the ac-

tion of its officers, contrive a conviction through the pretense of a trial which in truth is 'but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured.' Mooney v. Holohan, 294 U.S. 103, 112 [55 S.Ct. 340, 79 L.Ed. 791]. And the trial equally is a mere pretense where the state authorities have contrived a conviction resting solely upon confessions obtained by violence. The due process clause requires 'that state action, whether through one agency or another, shall be consistent with the fundamental principles of liberty and justice which lie at the base of all our civil and political institutions.' Hebert v. [State of] Louisiana, 272 U.S. 312, 316 [47 S.Ct. 103, 71 L.Ed. 270]."

In Moore v. Dempsey, 1923, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543, the court beginning at the bottom of page 90 of 261 U.S., at page 266 of 43 S.Ct., said:

"In Frank v. Mangum, 237 U.S. 309, 335 [35 S.Ct. 582, 59 L.Ed. 969], it was recognized of course that if in fact a trial is dominated by a mob so that there is an actual interference with the course of justice, there is a departure from due process of law; and that 'if the State, supplying no corrective process, carries into execution a judgment of death or imprisonment based upon a verdict thus produced by mob domination, the State deprives the accused of his life or liberty without due process of law.' We assume in accordance with that case that the corrective process supplied by the State may be so adequate that interference by habeas corpus ought not to be allowed. It certainly is true that mere mistakes of law in the course of a trial are not to be corrected in that way. But if the case is that the whole proceeding is a mask—that counsel, jury and judge were swept to the

fatal end by an irresistible wave of public passion, and that the State Courts failed to correct the wrong, neither perfection in the machinery for correction nor the possibility that the trial court and counsel saw no other way of avoiding an immediate outbreak of the mob can prevent this Court from securing to the petitioners their constitutional rights."

At page 287 of 297 U.S., at page 465 of 56 S.Ct., Brown v. State of Mississippi, supra, the court said:

"'* * * The duty of maintaining constitutional rights of a person on trial for his life rises above mere rules of procedure, and wherever the court is clearly satisfied that such violations exist, it will refuse to sanction such violations and will apply the corrective.'"

Since the court is of the opinion that the constitutional provision and statutes of Arkansas do not impinge on the rights of a defendant in a criminal action pending in a court of competent jurisdiction in Arkansas, the court should not anticipate that the Judge of the Circuit Court within and for the Fourth Circuit of Arkansas, or any of the judicial officers, will so administer the law as to result in a denial of the constitutional rights of the defendant. The court cannot determine in advance of the trial whether a wrong, so fundamental that it will make the whole proceeding a mere pretense of a trial and render any conviction and sentence wholly void, will occur in the proceeding. It is difficult to conceive that the entire citizenship of each of the counties in the Fourth Judicial Circuit are so inflamed and so prejudiced against a defendant in a criminal action as to become a party to denying the defendant her fundamental rights as set forth in the 14th Amendment to the Constitution of the United States. Of course, if in the proceeding either leading up to or during the trial such facts are established, and a conviction results solely therefrom, the defendant is not

without remedy as stated in the cases herein cited. But at this time the court is without jurisdiction to retain the case, and therefore an order is being entered today remanding the case to the Benton County Circuit Court whence it was removed.