**Earnestine DOVE et al., Plaintiffs,**
v.
**Lee PARHAM et al., Defendants.**
**Civ. A. No. 3680.**

United States District Court
E. D. Arkansas, W. D.
May 12, 1961.

George Howard, Jr., Pine Bluff, Ark., Robert Carter, New York City, for plaintiffs.

Herschel H. Friday, Jr., Robert V. Light, Little Rock, Ark., for defendants.

HENLEY, Chief Judge.

This matter is now before the Court on a report filed on November 19, 1960, by the defendants, school directors and officials of Dollarway School District No. 2, Jefferson County, Arkansas, hereinafter called the Board, and a supplemental report filed on March 11, 1961, by means of which reports the Board seeks approval of its plan for the elimination of compulsory racial segregation of the public schools in the Dollarway district over a period of transition.[1]

The validity and sufficiency of the plan incorporated in those two reports are challenged by the plaintiffs.

As part of its present plan the Board reiterates its recognition of the binding force of the Brown decisions and of the decisions of the Court of Appeals in this case, and reaffirms its good faith intention to move with all deliberate speed toward the elimination of compulsory segregation in the Dollarway district. The Board proposes to discharge its obligations through the utilization of a permissible period of transition, and through the application in a valid manner of the pupil assignment criteria set up in the Arkansas Pupil Assignment Law, Act 461 of 1959, and in the rules and regulations promulgated by the Board prior to the April 1960 decision of this Court in this case (183 F.Supp. 389).

Obviously, in assigning pupils to particular schools the Board is concerned, on the one hand, with students who have already entered school, and, on the other hand, with students who at the beginning of any school year are enrolling for the first time at the first grade level. With regard to students falling into the former category, the Board in its original plan announced a general policy against "lateral transfers" of students except in exceptional circumstances and set up a rather rigid definition of such circumstances. In its present plan the Board adheres in general to its policy against lateral transfers, but in deference to certain warnings contained in this Court's opinion approving its original plan, the Board states that said policy will not be enforced as rigidly at the lower grade levels as it will be with respect to students in the higher grades.

As to students entering school for the first time at the first grade level, the Board's original plan contained, to quote the Court of Appeals, "some general sof-

---

1. On April 30, 1960, this Court approved a transitional desegregation plan that was submitted by the Board. Dove v. Parham, D.C.Ark., 183 F.Supp. 389. (For a history of the proceeding leading up to the Court's order of April 30, see the Court's opinion of February 19, 1960. Dove v. Parham, D.C.Ark., 181 F.Supp. 504.) The Court of Appeals concluded that the plan lacked specificity and objectivity, reversed this Court's decision, and remanded the case for further proceedings. Dove v. Parham, 8 Cir., 282 F.2d 256. Pursuant to mandate this Court entered an order directing the Board to submit another plan which would meet the requirements of law. The plan incorporated in the Board's report of November 19, 1960, appeared insufficient to the Court after hearing, and the Board, following an informal conference between Court and counsel on both sides, submitted its supplemental report of March 11, 1961.

tening language," but in that Court's view the plan did not "set forth any definitive program or step on the board's part for so effecting desegregation, or hold forth any promise of such a result, as a 'reasonable start' at this level." 282 F.2d at page 260.

The report filed on November 19, 1960, also contained some language indicative of a more liberal or lenient attitude toward the assignment of Negro children to the first grade at Dollarway, and in argument counsel emphasized the fact that the Board had assigned one Negro girl to the Dollarway school for the 1960–61 school year. This Court, however, was unable to find in the November plan a sufficiently affirmative and objective statement of the Board's future intentions with regard to first grade students to justify approval of that plan as a prompt and reasonable start toward the elimination of compulsory segregation.

In its supplemental report the Board states that at the first grade level a pre-school registration will be conducted so as to give every registering student and his or her parents the opportunity to indicate a preference as to the school in the district which they desire the registering student to attend;[2] that all of such students will be given nationally recognized tests, namely the California Short-Form Test of Mental Maturity and the Metropolitan Readiness Test dealing with reading and numbers;[3] and that each student registering for the first grade who scores at least in the average range of such tests under nationally uniform grading will be assigned, subject to certain qualifications to be men-

tioned, to the school for which a prefer-ence is indicated. This means that a Negro child who expresses or for whom there is expressed a preference for attendance at Dollarway will, in general, and subject to qualifications, be assigned to that school. And, as pointed out in an earlier opinion (183 F.Supp. 389), once such a child is so assigned to Dollarway, the Board's policy against lateral transfers will tend to keep him there.

The qualifications to the general rule of assigning to the school of their choice first graders who score at least within the average range on the tests mentioned are that such assignments are to be consistent with available room and teaching capacity, and not "clearly contrary to applicable and nondiscriminatorily applied standards and criteria of the Pupil Assignment Law and the Board's Regulations under and pursuant thereto."

Students who score below the average range on the tests will be assigned initially "to the school at which, in the judgment of the Board, they will be afforded the greatest opportunities to develop their educational capacities."

Giving due weight to the arguments against the plan advanced by plaintiffs, the Court is persuaded that the plan is sufficient on its face to meet initial requirements, and that if actually carried out objectively and with a good faith intent to end ultimately the system of segregation which has existed traditionally in the Dollarway district, it will constitute an adequate start toward the elimination of such segregation and will initiate a permissible transition period.[4]

2. There are only two schools in the Dollarway district. Until the admission of the one Negro student in September 1960, the Dollarway school had been used exclusively for the education of white students, whereas the Townsend Park school has always been reserved for the education of Negro students exclusively. Counsel for both sides have recognized throughout these proceedings that from a practical standpoint no white students will express any desire to be assigned to Townsend Park.

3. It may be said parenthetically that among the public schools of Arkansas the administration of such tests to students about to enter school for the first time is neither novel nor unique educational procedure.

4. In reaching this conclusion the Court does not overlook plaintiffs' argument that although the tests mentioned are to be administered to all students alike they are, from a practical standpoint, to be applied as assignment criteria to Negro students 'only,' and that a white child

An affected school district is permitted during a transition period some freedom of selection in designating the Negro students who are to attend formerly segregated schools, and in that connection they may employ legitimate assignment criteria, and may even give some limited consideration to race. See Dove v. Parham, supra, 282 F.2d at page 262. And the Court feels that the basic intelligence or mental readiness and maturity of Negro students about to enter school at the first grade level is a legitimate and objective basis of selection during the transition period and may permissibly be used by the Board during such period in accomplishing the program which it has initiated.

The Court recognizes, as must the Board, that the latter's announced willingness to assign Negro first grade students to Dollarway on the basis of score made on the pre-school examination is subject to the qualifications which have been mentioned, and that those qualifications may be so employed in practice as to destroy the facial validity of the plan. But, it is obvious that the attaining of an average or better score on the intelligence tests will of itself do much to satisfy a number of the legitimate assignment criteria contained in the statute and the Board's regulations, and it is at least doubtful in assigning a Negro student that some of the criteria contained in the statute and regulations may be employed lawfully.

will be assigned to Dollarway regardless of the score he makes on the test, assuming that he scores well enough to be admitted to school at all, whereas Negro students who score below average will be automatically assigned to Townsend Park. Nor does the Court overlook the fact that if this method of assigning first grade students continues, and if the Board persists in a strict application of its policy against lateral transfers, the end result might be that the student body at Dollarway would be made of white students assigned there initially without regard to their scores on the tests and of Negro students who were assigned to that school only by

Actually, in this as in other contexts, the proof of the pudding is in the eating, and while the Court is willing to give tentative approval to the plan as being valid and sufficient on its face as a transitional step, it is not willing to give the plan final approval in advance of seeing what actions the Board in fact will take under it. The law requires not only good faith and objectivity in the conception of the plan, but also good faith and objectivity in operation thereunder.

In the course of its opinion the Court of Appeals noted that one Negro girl was assigned to the Dollarway school for the current school year, and suggested that on remand this Court "may possibly desire to have indication made, in the more definitive expression of program which the board is being required to make, of what scope of opportunity generally was afforded for admission, in relation to such action." 282 F.2d at page 261.

The Court is informed by counsel that all of the Negro students in the Dollarway district who were to enroll at the first grade level during the current term were given an opportunity to apply for assignment to the Dollarway school. Three of such students requested to be so assigned and pressed their applications to conclusion. One of the applicants was admitted. The applications of the other students, one boy and one girl, were denied. The Court is not aware

reason of having scored at least average on the tests, and that the student body at Townsend Park would be made up entirely of Negro students some of whom at least would have been excluded from Dollarway merely because they failed to score within the average range on tests administered before they even entered school, and this situation would exist eventually at all grade levels. Obviously, such an assignment method cannot be viewed as a constitutional permanent solution to the Board's problems, but this does not necessarily mean that the plan is not valid as a "transitional plan," as a substantial step toward an ultimate goal.

of the grounds upon which the denials were based.

The two students whose applications for assignment to the Dollarway school at the first grade level have the right under the Board's regulations to request a lateral transfer from Townsend Park to Dollarway at the second grade level, and have the right to have their applications if made considered and passed upon by the Board in accordance with law. Should such applications be made, the Board in considering them should bear in mind that the original applications of those two students were denied before the Board had the benefit of the views of the Court of Appeals as to its original plan, and before the Board had determined to use the tests that have been mentioned as an objective basis for the assignment of first graders; and, in the Court's opinion, the Board should take into consideration the scores made by said students on the intelligence tests, if any, that may have been administered to them before they entered school or during the current school term, and should also consider the work that said students have done during their first year. These factors, of course, are to be considered along with other appropriate factors and criteria.

Should other Negro students apply for lateral transfers, such applications should be considered in the light of the Board's general policy with regard to such transfers and of such criteria as are applicable to the particular individuals. The Board has stated that its general policy against lateral transfers will be applied more leniently at the lower grade levels, and the Court is willing to presume at this time that said statement has been made in good faith and that it has actual meaning. However, the Court will take this occasion to repeat what it said in its April 1960 opinion (183 F. Supp. at page 393): " * * * if over a period of time * * * substantial numbers of (Negro) students apply for transfers to (Dollarway School) at the lower grade levels, and if none of such applications are granted, or if the number granted is unreasonably low in proportion to the number of applications, the Court might find it hard to believe that unlawful and unreasonable racial discrimination is not being practiced."

The Court is advised that the making of initial assignments for the 1961–62 term will begin the latter part of this month, and should be completed finally, including the completion of all administrative procedures incident to applications for reassignment, by the latter part of June or early July. The defendants will be directed to report to the Court not later than July 15 as to the assignments actually made, and the Court will then be in a better position to judge whether the defendants have in fact and in good faith initiated a period of transition which will lead ultimately to the establishment of a non-discriminatory school system.

It is, therefore, considered, ordered, and adjudged that the plan incorporated in the Board's report of November 19, 1960, as supplemented by the report of March 11, 1961, be, and the same hereby is, approved on its face, and that the Board be, and it hereby is, authorized to proceed under it in making assignments for the 1961–62 school year.

It is further ordered, however, that the Board file a written report with this Court not later than July 15, 1961, showing the assignments, if any, of Negro students to the Dollarway school under the plan, and also showing the applications for such assignments, if any, as were made to and denied by the Board. A copy of this report is to be served upon opposing counsel.

Upon the filing and consideration of such report the Court will enter such other and further orders as may appear necessary or proper, and jurisdiction for that purpose and for all other appropriate purposes is retained.