**STATE OF ARKANSAS, Plaintiff,**

v.

**William M. HOWARD, Defendant.**

**No. PB-63-C-9.**

United States District Court
E. D. Arkansas,
Pine Bluff Division.

May 31, 1963.

Wiley A. Branton, Atlanta, Ga., for petitioner.

E. W. Brockman, Jr., Pros. Atty., Eleventh Judicial Dist., Pine Bluff, Ark., for respondent.

HENLEY, Chief Judge.

Invoking the provisions of 28 U.S.C.A. § 1443,[1] William Howard, a Negro citizen of Pine Bluff, Jefferson County, Arkansas, has removed to this Court two criminal prosecutions commenced against him in the Circuit Court of Jefferson County. In one of those proceedings Howard, hereinafter called petitioner, is charged with assault with intent to kill one Johnny Irvin in violation of Ark.Stats., 1947, § 41–606, and in the other petitioner is charged with carrying a knife as a weapon in violation of Ark.Stats., 1947, § 41–4501.[2] In a pleading designated "Response And Motion To Remand" the State takes the position that the federal

1. "Any of the following civil actions or criminal prosecutions commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

"(1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;

"(2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law."

2. Under Arkansas law an assault with intent to kill is a felony, whereas the unlawful carrying of weapons, including knives, is a misdemeanor. Both prosecutions against petitioner were commenced by the filing of informations against him by the Prosecuting Attorney of Jefferson County. Prosecution by information, rather than by indictment, in felony cases has been permitted in Arkansas since 1937 when Amendment 21 to the Arkansas Constitution of 1874 became effective.

628

statute above cited affords no basis for the removal of the criminal prosecutions, that this Court has no jurisdiction of the same, and that the cases should be remanded to the State court for trial.

The altercation which gave rise to the prosecutions of petitioner took place on the afternoon of January 22, 1963, near the Dollarway School on the outskirts of Pine Bluff. On that day pursuant to orders of this Court entered in the so-called Dollarway School Case,[3] the officials of the Dollarway School District had admitted petitioner's niece to the formerly all white Dollarway School. The niece attended the school that day as did a younger Negro student, those being the only Negroes enrolled in the school at that time. The day was marked by racial incidents directed at the older Negro student. Irvin, the alleged victim of petitioner's alleged attack, who was a white student enrolled at Dollarway participated in those incidents and indeed may well have been a principal instigator of them.

In the afternoon of January 22 petitioner left his place of employment in Pine Bluff and drove in his station wagon to the school for the purpose of transporting the two Negro students to their homes. As the station wagon was leaving the school there was some white student demonstration, and a rock was hurled against the station wagon breaking one or more of its windows. Petitioner who had a knife in his possession became involved in a physical encounter with Irvin in the course of which Irvin was wounded more or less seriously by petitioner's knife which had been drawn by petitioner in what he claims to have been reasonable self defense. The prosecutions of petitioner followed.[4]

In support of his claim of federal jurisdiction petitioner relies upon both subdivisions of section 1443 heretofore quoted. As far as the first subdivision is concerned (§ 1443(1)) the petition alleges in substance that by reason of efforts of Negroes to bring to an end compulsory racial segregation in the public schools by means of litigation, including Dove v. Parham, and by reason of orders entered in such cases by the federal courts, racial prejudice against Negroes in Jefferson County and in other Arkansas counties has become so inflamed and has reached such a pitch that petitioner cannot obtain a fair trial in the State courts in any county in Arkansas. It is alleged that if petitioner is tried in the State courts he will be subjected to racial discrimination in the selection of a jury. It is further alleged that in Jefferson County Negroes involved in the Dollarway School litigation have been subjected to physical violence and to vandalism with respect to their property; that the local law enforcement officers have instituted no proceedings against any white persons who have assaulted Negroes or damaged their property, whereas said officers are prosecuting petitioner to the fullest limit of the law for his alleged offenses. And finally it is alleged that the use in Arkansas of criminal informations in felony cases, rather than grand jury indictments, is contrary to the Constitution of the United States.

3. The case just mentioned, Dove v. Parham, E.D.Ark., Docket No. 3680, was commenced by Negro citizens of the defendant school district to compel the elimination of racial segregation in the public schools of the district. The litigation, begun in 1959, has been protracted and has called forth a number of published opinions of this Court, and two opinions of the Court of Appeals. See Dove v. Parham, D.C., 176 F.Supp. 242, modified Parham v. Dove, 8 Cir., 271 F.2d 132; Dove v. Parham, D.C., 183 F.Supp. 389, aff'd in part and reversed in part, Parham v. Dove, 8 Cir., 282 F.2d 256;

Dove v. Parham, D.C., 194 F.Supp. 112, and D.C., 196 F.Supp. 944. In addition to those published opinions, other opinions have been filed and orders entered.

4. The informations were filed in January, and the removal petition was filed in March. Since 28 U.S.C.A. § 1446(c) provides that a petition to remove a criminal case may be filed at any time before trial, and since the instant petition was so filed, the proceeding was timely. The Circuit Court has taken no steps in the criminal cases since their removal, and petitioner is at large on bail.

As to the second subdivision of the statute (§ 1443(2)), it is the theory of petitioner that in undertaking to transport to their homes the two Negro students in attendance at the Dollarway School he was acting under color of authority derived from a "law providing for equal rights," and that he is being prosecuted for such action.

With respect to the actual altercation with Irvin, the petitioner claims that Irvin had struck him once, that Irvin was advancing on him again with a metal object in his hand, that petitioner was swinging his knife back and forth in an arc in an attempt to keep Irvin off, and that Irvin walked into the knife and was cut. The Court, of course, expresses no opinion as to the truth of petitioner's version of the episode or as to the guilt or innocence of the petitioner on the criminal charges against him.

The procedure for the removal of both civil and criminal proceedings from State courts to the federal courts is governed by 28 U.S.C.A. § 1446, and before going further the Court desires to make some comment on the procedure followed in this case which in some respects did not comply strictly with section 1446 or with the practice prescribed by the local rules of this Court.

■ Section 1446(a) provides that a party desiring to remove a case from a State court to a federal court shall file in the federal court a verified petition setting out the basis of the removal and attaching copies of the pleadings and process in the State court. Here, the petition is verified and copies of the State informations and warrants are attached to the petition as exhibits. Counsel seems to have overlooked, however, the fact that while the two informations would doubtless be consolidated for trial, whether in the State court or the federal court, the two cases against petitioner are separate and distinct cases, and a separate removal petition should have been filed in each case. However, as noted, a petition for removal in a criminal case can be filed at any time before trial, and nothing would be gained here by remanding the cases on the ground that only one petition was filed when there should have been two since petitioner would find it a simple matter to prepare and file proper petitions in both cases. Further, the State seeks no remand on that basis.

■ The prayer of the petition includes a request that the Court allow time for the briefing of the jurisdictional question, and that after briefing and hearing the Court enter an order removing the cases from the State court to the federal court for trial. Section 1446(e) provides among other things that promptly after the filing of the petition in the federal court the removing defendant shall give written notice thereof to all adverse parties, and shall file a copy of the petition with the clerk of the State court, and that this shall "effect the removal and the State court shall proceed no further unless and until the case is remanded." Hence, there was no occasion for petitioner to ask for an order removing the cases. Subject to a possible remand, they were removed automatically when a copy of the petition was filed with the Clerk of the Circuit Court.[5]

5. In its consideration of the procedural aspects of this case the Court encountered some difficulty with the language of § 1446(e) when read in connection with § 1446(d). Section 1446 (d) requires the filing of a removal bond in civil cases, but makes no such requirement with respect to criminal cases. However, § 1446(e) provides that "[p]romptly after the filing of such petition and bond," the giving of notice to the adverse parties, and the filing of a copy of the petition with the Clerk of the State Court the removal is deemed to be effected "and the State court shall proceed no further unless and until the case is remanded." It will be observed that the reference to the "petition and bond" appearing in § 1446(e) draws no distinction between civil and criminal cases. However, since no bond is required in a criminal case, it seems obvious that the words "and bond" appearing in the section should be ignored in criminal cases.

■■ Turning now to the other side of the coin, there was no occasion for the State to respond to the removal petition or to denominate its pleading "Response And Motion To Remand." A simple motion to remand would have been adequate to raise the jurisdictional question. Under Local Rule 8 of this Court such a motion is required to be supported by a brief statement of reasons and authorities, a copy of which is to be served on opposing counsel who then has ten days within which to file a statement of reasons and authorities in opposition to the motion. The State's "Response And Motion To Remand" was not accompanied by the supporting statement required by the Local Rule just mentioned.

Thus it may be seen that petitioner filed one petition for removal when he should have filed two, and that he asked for an order which he was not required to obtain and for leave to file a brief at a stage of the proceedings when there was no occasion for him to file a brief. Also it may be seen that the State filed a pleading which it was not required to file, and failed to file a statement of reasons and authorities which it should have filed.

The Court at length concluded that in the circumstances here present the procedural difficulties were not of controlling importance. Thereupon, leave was given counsel to file simultaneous briefs discussing the real jurisdictional questions in the case, and those briefs have now been filed and considered. The Court believes that the case can be decided properly upon the materials now before the Court, and that there is no necessity for the taking of testimony or the hearing of oral argument.

■■ In approaching the question of the Court's jurisdiction it is well to keep in mind that the right to remove a case to a federal court from a State court is purely statutory, and that the removing party must bring himself within the terms of the removal statute upon which he relies. Generally removal statutes should be construed strictly, but regardless of whether the particular statute relied on by petitioner should be so construed (cf. Colorado v. Symes, 286 U.S. 510, 52 S.Ct. 635, 76 L.Ed. 1253), it must be construed with the highest regard for the jurisdiction of the Courts of the several states to pass upon charges of violations of State laws. Ibid. Unless a case falls fairly within the terms of the removal statute relied upon, it must be remanded. If removal jurisdiction is to be broadened, such must be done by Congress, not by the courts.

## I.

■■ Taking up first the contention of petitioner based upon the first subdivision of section 1443. It is settled that the denial or inability to enforce civil rights in a State proceeding which will form the basis of a right to remove the proceedings under the first subdivision of the statute (§ 1443(1)) must flow from State laws and procedures themselves. The mere maladministration of those laws by individual State officials does not warrant a removal, even though such action be racially discriminatory or otherwise contrary to federal constitutional guarantees. In such a case the remedy of the defendant is not removal to federal court, but, rather, the pursuit of State appellate remedies followed by a request for review by the Supreme Court of the United States, or in some circumstances by post conviction habeas corpus proceedings in the appropriate federal district court. See in this connection the thorough discussion of section 1443(1) appearing in Judge Miller's opinion in Rand v. Arkansas, W.D.Ark., 191 F.Supp. 20, and the authorities there cited.

In Rand, supra, the defendant was charged with second degree murder in the Circuit Court of Benton County, Arkansas. Upon her original trial she was found guilty, and was sentenced to the penitentiary. Subsequently she appealed to the Supreme Court of Arkansas and her conviction was reversed, and the cause remanded for a new trial. Rand v. State, 232 Ark. 909, 341 S.W.2d 9. Prior

to the second trial Mrs. Rand removed the case to federal court on the basis of section 1443(1), her principal contention being that publicity given to her case had so inflamed public opinion against her that she could not obtain a fair trial either in Benton County or in any other Arkansas county to which the case could be transferred under Arkansas law. The case was held to be not removable, and it was remanded by the Court on its own motion.

After quoting from 2 Cyc. of Federal Procedure, §§ 3.81 and 3.82, the Court said:

"It is therefore apparent that to justify a removal under 28 U.S.C.A. § 1443, the petitioner must show a denial or inability to enforce his civil rights which results from the constitution or laws of the state, and it is only when such hostile state constitutional provisions or state legislation exist which interfere with the party's right to defense that he can have the case removed to a federal court. Commonwealth of Kentucky v. Powers, 1906, 201 U.S. 1, 26 S.Ct. 387, 50 L.Ed. 633 * * *. See generally 45 Am.Jur., Removal of Causes, Sec. 109.

\* \* \* \* \*

"As stated in 2 Cyc. of Fed.Procedure, Sec. 3.82:

" 'Denials of equal rights resulting from the constitution or laws of a state must be distinguished from those caused by the acts of judicial or administrative officers. The wrong in the one case is the direct and necessary result of the state law, of its necessary operation proprio vigore, while in the other it results from the administration of the law. In the former case, the action is removable, and in the latter it is not.'

"No doubt the petitioner anticipates difficulties in obtaining a fair and impartial trial because, as she claims, of inflamed public sentiment, but that is a question of fact to be determined by the trial court having jurisdiction to try the offense with which she is charged. If the constitutional rights of the petitioner are denied or invaded by the court, appellate jurisdiction can and will correct the wrong.

"It is incumbent upon the state court to afford the petitioner a fair and impartial trial, and if it fails to discharge this obligation, a remedy may be obtained by appeal to the Arkansas Supreme Court or ultimately to the Supreme Court of the United States. See Gibson v. State of Mississippi, 1896, 162 U.S. 565, 16 S.Ct. 904, 40 L.Ed. 1075." (191 F.Supp. at 24–25.)

■ Without stopping to go into detail, the Court takes judicial notice of all of the Arkansas constitutional and statutory provisions relating to criminal procedure, and holds that those provisions, including those relating to jury selection, change of venue, and appeal, are fair on their faces, meet federal constitutional requirements, and deprive no one of his civil rights or prevent any person from enforcing those rights in the State courts. If civil rights are denied to a defendant in an Arkansas criminal prosecution, the denial results from the improper administration of the Arkansas judicial machinery, and this is insufficient to warrant removal.

The rationale of Rand, with which this Court is in full agreement, is dispositive of petitioner's allegations that on account of local prejudice he cannot receive a fair trial in the Arkansas State courts.

■ There are other allegations relevant to the applicability of section 1443 (1) to this case, namely, the allegations that racial discrimination is practiced in the selection of jurors in Jefferson County and elsewhere in Arkansas, and that the permissive use of an information rather than an indictment in a felony case is violative of due process of law.

In connection with the alleged discrimination in jury selection petitioner points out that Arkansas juries are selected by

reference to the lists of persons who have paid poll taxes, and that the race of a poll tax payer is reflected on his poll tax receipt and on the lists of poll tax payers so that the jury commissioners in selecting jurors know which prospective jurors are white and which are Negro.[6]

While those allegations are true in themselves, and while it may be possible for Arkansas jury commissioners to use their knowledge of the race of prospective jurors, revealed by the poll tax records, to discriminate unlawfully against Negroes in jury selection, such discrimination is not required by Arkansas law. To the extent that it takes place, it is the result of improper administration of the Arkansas law, which can be corrected by means of appeal or other post-conviction procedures.

Assuming without deciding that there is racial prejudice in the Eleventh Judicial Circuit of Arkansas, of which circuit Jefferson County is a part, this Court cannot and will not presume at this stage that the prejudice is so great as to amount to mob domination of the State court or to render any trial of petitioner in that Court a mere sham or farce. Cf. Moore v. Dempsey, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543. Nor will the Court presume at this time that twelve fair minded men and women cannot be found and lawfully selected as jurors in Jefferson County to try petitioner, or that a change of venue to another county in the Eleventh Circuit will not be granted petitioner if he applies for such a change, or that an impartial jury cannot be found in any of the counties of the circuit. More than this, if the case is remanded, petitioner will be tried before an able and experienced Circuit Judge who it is presumed will be diligent to protect the legitimate rights of petitioner.

6. In order to be absolutely accurate it should be said that in order for a citizen of Arkansas to be eligible for jury duty he must be a qualified elector, and at the present time payment of the annual poll tax of $1.00 is a prerequisite to voting in Arkansas. Thus, while it is true that Ar-

The claim that it is a violation of due process for the State to initiate a criminal prosecution in a felony case by means of an information rather than by an indictment is plainly insubstantial and need not be commented upon further. Bute v. Illinois, 333 U.S. 640, 68 S.Ct. 763, 92 L.Ed. 986; Gaines v. Washington, 277 U.S. 81, 48 S.Ct. 468, 72 L.Ed. 793; Hurtado v. California, 110 U.S. 516, 4 S. Ct. 111, 28 L.Ed. 232; Moore v. Henslee, 8 Cir., 276 F.2d 876, 878.

## II.

Subdivision 1443(2) affords a federal forum to an individual who is being prosecuted in a State court for actions taken by him under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.

In connection with the contention now under discussion counsel for petitioner says in his brief:

"Petitioner's principal reliance is on § 1443(2), which authorizes removal when suit is brought against any person for any act done under color of authority derived from any law providing for equal rights. It is readily apparent that William M. Howard was prosecuted for such an act. He was not only exercising his rights as a citizen when he drove to the Dollarway High School to pick up the students at the request of their parents. He was also helping to implement the order of this Court by making it possible for two Negro children to attend the school. The act for which he was prosecuted * * * was done in order to protect himself and the two children, and to oppose those who were obstructing the implementation of this

kansas jury commissioners must select jurors by reference to the lists of poll tax payers, a juror is not selected because he has paid a poll tax, but because his payment of a poll tax makes him a qualified elector.

Court's order in violation of Title I of the Civil Rights Act of 1960, 18 U.S.C.A., § 1509."

Counsel points out that 28 U.S.C.A. § 1442(a) (3) authorizes removal when an officer of a federal court is prosecuted in a State court for any act done under color of office or in the performance of his duties. He then goes on to say:

"* * * Thus if a federal marshal escorting Negro children home from a desegregated school was prosecuted in the state courts for acts of self-defense committed in the line of duty, his case would surely be removable under § 1442(3). Petitioner held no formal office, but was otherwise in exactly the same position. If he is not entitled to remove his case under § 1443(2), which applies irrespective of whether any office is actually held, that statute has no meaning.

"Finally, it need only be said that the authority under which petitioner was acting was derived from a law providing for equal rights. The order of this Court which the petitioner was upholding emanated from a case brought under 28 U.S.C. § 1343(3) and 42 U.S.C. §§ 1981–1983. Dove v. Parham, 176 F.Supp. 242, 243 (E.D.Ark.1959). These are the basic civil rights statutes."

While a considerable body of case law construing and applying sections 1442 and 1443(1) has been developed, there seems to be a dearth of authority with respect to section 1443(2). Indeed, the Court has seen no case dealing with the question of the extent to which the right of removal unquestionably available to a federal officer under section 1442 is or may be available to a private citizen under section 1443(2).

It may be assumed, at least for argument's sake, that in certain circumstances this statutory provision justifies the removal to a federal court of a State court prosecution growing out of events transpiring while a private citizen is transporting or escorting Negro children to or from a school which is in the process of desegregation under federal court orders, but the Court is not persuaded that such circumstances are present here. Otherwise stated, even if the material factual allegations of the petition are accepted at face value, the Court is not convinced that when petitioner became involved in his altercation with Irvin petitioner was acting "under color of authority derived from any law providing for equal rights."

The weakness of petitioner's position lies in his premise that he was implementing the Court's orders in the Dollarway case. That premise is unsound. Petitioner was not a party to that suit, and the orders entered therein did not require, authorize, or request petitioner to do anything. The orders in question insofar as pertinent to this case simply directed the school officials to admit the Negro students to the school. The orders did not provide that the students should be transported to the school or that they be provided with an escort either coming or going. It is a matter of history in the Dollarway litigation that apart from certain incidents which took place when Negro students first attempted to be enrolled in the Dollarway School and when the first Negro student was admitted at the first grade level at the opening of the 1960–61 session in September 1960 desegregation of the school had proceeded peacefully up to the incident of January 22, 1963, and when the admission of petitioner's niece was ordered there was no occasion to apprehend that she or the younger student who had attended the school for some time without incident would be subjected to violence or would need any protection.

Petitioner in going to the school to pick up the Negro students and in undertaking to transport them to their homes was not in any legal sense implementing any order of this Court or acting under any "color of authority" derived from any order of this Court or any provision of the Federal Constitution or any statute, although, of course, had the Court not entered its orders which permitted

the Negro students to be enrolled at Dollarway there would have been no occasion for petitioner to have gone to the school in the first place. Hence, the connection between the Court's orders and their underlying constitutional and statutory bases, on the one hand, and petitioner's actions which led up to his present difficulties is not a proximate connection. It is merely an example of "but for" causation, and is not sufficient to enable petitioner to invoke successfully the provisions of section 1443(2).

Although petitioner argues to the contrary, as the Court sees it petitioner was acting purely as a private citizen, doing what any relative or friend of the Negro students might have done for their convenience. In the course of his activities he assaulted and/or was assaulted by a white student, and the encounter has resulted in criminal charges being filed in the State court. This is not the type of case which Congress had in mind when the statute was passed.

An order of remand will be entered.