M. M. POWELL, Peter C. Mavrikis, Carl Wayne Matthews, Petitioners,

v.

STATE OF ARKANSAS, Respondent.

No. FS-70-C-18, 19 and 20.

United States District Court,
W. D. Arkansas,
Fort Smith Division.

Feb. 25, 1970.

William Moore, Jackson, Miss., Sherman Kusin, Texarkana, Tex., for petitioners.

Joe Purcell, Atty. Gen., by Don Langston, Deputy Atty. Gen., for respondent.

OPINION

PAUL X. WILLIAMS, District Judge.

On February 16, 1970 M. M. Powell, Peter C. Mavrikis and Carl Wayne Matthews effected a removal of the above styled cases and a statutory stay of proceedings in the prosecution against each of them by filing petitions purporting to bring the proceedings within the terms of 28 U.S.C. § 1443. They were permitted to amend and include an allegation that the civil rights of each petitioner was also violated under the terms of 42 U.S.C. § 1983.

The petitioners complied with 28 U.S.C. § 1446 by giving notice of the filing of the petitions to all adverse parties and filing a copy with the Clerk of the Circuit Court of Polk County, Arkansas,

which effected removal and stayed the prosecution pending in the State Court.

The Prosecuting Attorney of Polk County, Arkansas and the Attorney General of Arkansas each filed a petition to remand together with notice that same would be presented to and heard by the Court on February 20, 1970.

On February 20, 1970 the motions to remand were presented, the State of Arkansas appearing by its Attorney General, through his deputy, Hon. Don Langston. The petitioners appeared by their attorneys Hon. William Moore and Hon. Sherman Kusin.

After hearing oral arguments the Court took the matter under advisement and now enters its finding that each case should be remanded, having been improvidently removed to this Court and that this Court is without jurisdiction in each case.

In each case the petitioner is charged with robbery and alternatively with grand larceny in an information filed against him by the Prosecuting Attorney of Polk County, Arkansas.

■ In each petition for removal it is first alleged in general terms that the present petitioner is being denied and cannot enforce his equal civil rights as a citizen of the United States. This allegation lacks specificity sufficient to determine whether or not there is basis in fact for such an allegation.

Petitioners next state that each has a right under the Fifth Amendment not to be deprived of liberty without due process and a right under the Sixth Amendment to trial by an impartial jury and that these rights have been violated by pre-trial publicity of such nature that each petitioner cannot receive a fair trial in Polk County, Arkansas; and that the jury in Polk County was selected by Commissioners and is not constitutionally qualified to sit in judgment of each defendant.

■ If this last contention is true it is of such nature that it can be first determined by the State Trial Court, then by the Arkansas Supreme Court on appeal, and then by the highest Court of our land, the Supreme Court of the United States. None are within the scope of 28 U.S.C. § 1443.

The Court notes that in a short time the jury in Polk County will be chosen under the relatively new Random Selection Plan—and if there is a showing of merit, it is to be considered that the Circuit Court of Polk County will in a proper manner see to it that each defendant is afforded a Constitutional Jury.

■ Petitioners allege that the information is vague and indefinite; that each has a right under the Sixth Amendment to be confronted with witnesses against him, and to have process for obtaining witnesses, and that their rights have been violated by the trial judge's refusal to allow sufficient time to take depositions of the witnesses who are to testify against him. None of these allegations are within the scope of 28 U.S.C. § 1443.

The statute under which removal is sought reads as follows.

28 U.S.C. § 1443 Civil right cases

"Any of the following civil actions or criminal prosecutions, commenced in a State Court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending: (1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;

(2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law."

As to § 1443 (2) we find no application whatsoever to petitioners herein. For a good discussion of this issue see State of Arkansas v. Shaddox, 261 F. Supp. 566 (W.D.Ark.1966), and State of

Arkansas v. Howard, 218 F.Supp. 626 (E.D.Ark.1963).

Petitioners main thrust under the petition for removal is directed to § 1443 (1) and this opinion is so written.

The United States Supreme Court in the case of Georgia v. Rachel, 384 U.S. 780, 86 S.Ct. 1783, 16 L.Ed.2d 925, (1966) enunciated the principles which control and govern these causes as to all the allegations set out in the petitions for removal. The Court said:

> "On the basis of the historical material that is available, we conclude that the phrase 'any law providing for * * * equal civil rights' must be construed to mean any law providing for specific civil rights stated in terms of racial equality. Thus, the defendants' broad contentions under the First Amendment and the Due Process Clause of the Fourteenth Amendment cannot support a valid claim for removal under § 1443, because the guarantees of those clauses are phrased in terms of general application available to all persons or citizens, rather than in the specific language of racial equality that § 1443 demands. As the Court of Appeals for the Second Circuit has concluded, § 1443 'applies only to rights that are granted in terms of equality and not to the whole gamut of constitutional rights * * *.' 'When the removal statute speaks of "any law providing for equal rights," it refers to those laws that are couched in terms of equality, such as the historic and the recent equal rights statutes, as distinguished from laws, of which the due process clause and 42 U.S.C. § 1983 are sufficient examples, that confer equal rights in the sense, vital to our way of life, of bestowing them upon all.' " (384 U.S. 792, 86 S. Ct. 1790.)

During oral argument counsel for the petitioners quite candidly admitted to the Court that there were no *racial overtones* in these cases but urged the Court to extend the doctrine to other situations such as the ones at hand. The United States Supreme Court has not chosen to extend removal under 28 U.S. C. § 1443 and this Court does not consider it wise nor legal to do so.

In City of Greenwood v. Peacock, 384 U.S. 808, 86 S.Ct. 1800, 16 L.Ed.2d 944, (1966) the Court cited with approval the *Rachel* case, supra, and spoke out on the issue at hand herein and very pointedly restricted the removal privilege. In that case fifteen individuals allegedly affiliated with civil right groups were charged with various offenses against the laws of Mississippi and/or ordinances of the City of Greenwood. These charges included assault, interfering with an officer in the performance of his duties, contributing to the delinquency of a minor and others.

The petitioners therein filed essentially identical petitions for removal in the District Court denying that they had engaged in conduct prohibited by valid laws, and stated that their arrest and prosecutions were made for the purpose of harassing petitioners, and of punishing them, and to deter them from the exercise of their constitutional rights to protest the condition of racial discrimination and segregation in Mississippi. The petitioners also alleged that the "officers of the State were prejudiced against them because of race" and that the "trial would take place in a segregated courtroom" and that "Negroes would be excluded from the jury." All of the cases were remanded to the State Court for appropriate action.

In finding that the removal petitions were insufficient the Court said:

> "First, no federal law confers an absolute right on private citizens—on civil rights advocates, on Negroes, or on anybody else—to obstruct a public street, to contribute to the delinquency of a minor, to drive an automobile without a license, or to bite a policeman. Second, no federal law confers immunity from state prosecution on such charges." (384 U.S. 826–827, 86 S.Ct. 1812.)

In like respect, no federal law confers a right on these petitioners to commit robbery or grand larceny, nor does it confer immunity from prosecution in state court on such charges.

"The civil rights removal statute does not require and does not permit the judges of the federal courts to put their brethren of the state judiciary on trial." (384 U.S. 828, 86 S.Ct. 1812.)

It follows anything less than a restricted doctrine in connection with the removal under 28 U.S.C. § 1443 would open virtually a "Pandora's Box" of troubles. A pertinent quote from the *Greenwood* case, supra, is illustrative of a few of the many problems which would arise if removal were allowed under the circumstances urged by petitioners herein.

"It is worth contemplating what the result would be if the strained interpretation of § 1443 (1) urged by the individual petitioners were to prevail. In the fiscal year 1963 there were 14 criminal removal cases of all kinds in the entire Nation; in fiscal 1964 there were 43. The present case was decided by the Court of Appeals for the Fifth Circuit on June 22, 1965, just before the end of the fiscal year. In that year, fiscal 1965, there were 1,079 criminal removal cases in the Fifth Circuit alone. But this phenomenal increase is no more than a drop in the bucket of what could reasonably be expected in the future. For if the individual petitioners should prevail in their interpretation of § 1443(1), then every criminal case in every court of every State—on any charge from a five-dollar misdemeanor to first-degree murder—would be removable to a federal court upon a petition alleging (1) that the defendant was being prosecuted because of his race and that he was completely innocent of the charge brought against him, or (2) that he would be unable to obtain a fair trial in the state court. On motion to remand, the federal court would be required in every case to hold a hearing, which would amount to at least a preliminary trial of the motivations of the state officers who arrested and charged the defendant, of the quality of the state court or judge before whom the charges were filed and of the defendant's innocence or guilt. And the federal court might, of course, be located hundreds of miles away from the place where the charge was brought. This hearing could be followed either by a full trial in the federal court, or by a remand order. Every remand order would be appealable as of right to a United States Court of Appeals and, if affirmed there, would then be reviewable by petition for a writ of certiorari in this Court. If the remand order were eventually affirmed, there might, if the witnesses were still available, finally be a trial in the state court, months or years after the original charge was brought. If the remand order were eventually reversed, there might finally be a trial in the federal court, also months or years after the original charge was brought.

We have no doubt that Congress, if it chose, could provide for exactly such a system. We may assume that Congress has constitutional power to provide that all federal issues be tried in the federal courts, that all be tried in the courts of the States, or that jurisdiction of such issues be shared. And in the exercise of that power, we may assume that Congress is constitutionally fully free to establish the conditions under which civil or criminal proceedings involving federal issues may be removed from one court to another.

But before establishing the regime the individual petitioners propose, Congress would no doubt fully consider many questions. The Court of Appeals for the Fourth Circuit has mentioned some of the practical questions that would be involved: "If the removal jurisdiction is to be expanded and federal courts are to try offenses against state laws, cases not originally

cognizable in the federal courts, what law is to govern, who is to prosecute, under what law is a convicted defendant to be sentenced and to whose institution is he to be committed * * *?" Baines v. City of Danville, 357 F.2d 756, 768–769. To these questions there surely should be added the very practical inquiry as to how many hundred of new federal judges and other federal court personnel would have to be added in order to cope with the vastly increased caseload that would be produced." (384 U.S. 832, 833, 834, 86 S.Ct. 1814–1816.)

In the case of Arkansas v. Shaddox, 261 F.Supp. 566 (W.D.Ark.1966) proceedings were had on a motion to remand where the defendant was charged in State Court with the crime of assault with intent to kill. The remand petition alleges *inter alia* that local prejudice would prevent a fair trial and that a change of venue had twice been denied by the State Court. That such denial constituted deprivation of petitioner's right of due process and equal protection of the laws as guaranteed by the Constitution. The Court held the allegations were insufficient to permit removal under 28 U.S.C. § 1443. In reaching its decision the Court relied on the *Rachel* case, supra, and said on page 569 of *Shaddox* that:

"The gist of those decisions is that section 1443(1) does not permit removal merely because State court prosecution will or may result in a violation of a federal right broadly guaranteed to all persons by the Constitution of the United States, as amended, and that removal under section 1443(2) is available only to federal officers and persons assisting them in the performance of their duties.

Section 1443(2) is not involved in this case at all, and defendant must stand or fall on section 1443(1). * * *

In view of the construction which the Supreme Court has placed upon section 1443(1) in the Rachel case, it is clear that the State's motion to re-

mand this case must be granted. This case has no racial involvements or overtones, and the federal rights invoked by defendant are simply broad constitutional guarantees of due process of law and equal protection of the laws. There is not involved here any federal law 'providing for specific civil rights stated in terms of racial equality.' "

In an earlier Arkansas case, Rand v. State of Arkansas, 191 F.Supp. 20 (W. D.Ark.1961), the petition for removal alleged race prejudice prevented the petitioner from receiving a fair trial in State court in violation of the Fourteenth Amendment and other constitutional guarantees. Judge John E. Miller held that this was not the type of removal allowed by 28 U.S.C. § 1443 where the racial prejudice as it existed could not be attributed to the State Constitution or laws. He elaborated further to point out that it was incumbent on the State court to afford petitioner a fair trial and that if it failed, a remedy could be obtained by appeal to the Arkansas Supreme Court and ultimately to the Supreme Court of the United States.

Another Arkansas case reaching the same conclusion was Arkansas v. Howard, 218 F.Supp 626 (E.D.Ark.1963) in which the court said:

"If civil rights are denied to a defendant in an Arkansas criminal prosecution, the denial results from the improper administration of the Arkansas judicial machinery, and this is insufficient to warrant removal." (218 F.Supp. 631.)

See also the case of Louisiana v. Rouselle, 418 F.2d 873 (5 Cir. 1969) which case is in accord with the three cited Arkansas cases and the *Rachel* case, supra.

■ The denial of the relief requested by the removal petitions herein does not mean that the Constitutional rights of the petitioners will not be protected. There are many other remedies available to redress the wrongs claimed by the petitioners, if such claims are found to be

valid. This Court holds that it should not preempt the rights of the State Courts of Arkansas—especially before the State court has had an opportunity to proceed according to its laws in the orderly administration of justice and disposition of these criminal charges. Accordingly, an order will be entered this date remanding the three cases of petitioners to the Circuit Court of Polk County, Arkansas, so that same may be presented and heard according to the law and procedure of the State of Arkansas.

It is so ordered.