## STATE OF NEW JERSEY v. WEINBERGER et al.

District Court, D. New Jersey.
Feb. 5, 1930.

D. Frederick Burnett, of Newark, N. J., and James M. Dunn, of Paterson, N. J., for the State of New Jersey.

John A Matthews, of Newark, N. J., Walter Winne, of Hackensack, N. J., Louis Freeman, of Newark, N. J., and Harry H. Weinberger, of Passaic, N. J., for defendants.

FAKE, District Judge.

The above-named defendants were indicted by the Passaic county grand jury for the crime of conspiracy, and thereafter a petition was filed in the Passaic county court of quarter sessions praying the removal of the cause to this court pursuant to section 31 of the Judicial Code, 28 USCA § 74.

The petition for removal contains thirty-two paragraphs. The allegations therein may be divided into two classifications: First, those which are addressed to the words or conduct of officials; and, second, those directed to statutes of the state of New Jersey, under which it is urged the defendants are denied certain civil rights which are guaranteed to them by the Constitution of the United States.

For the purposes of the motion to remand, the state admits the truth of the allegations of the petition which are well pleaded and contends they are insufficient in substance to sustain the removal of the case. It is conceded that if any one of the many allegations is sufficient, the motion to remand should be denied.

The removal act, Judicial Code, § 31 (28 USCA § 74), gives the right of removal to "any person who is denied or can not enforce in the judicial tribunals of the State, or in the part of the State where such suit or prosecution is pending, any right secured to him by any law providing for the equal civil rights of citizens of the United States. * * *"

In construing the above language as it appeared in section 641 of the Revised Statutes, Mr. Justice Bradley, in Ex parte Wells, Fed. Cas. No. 17,386, said: "The allegations with regard to the manipulation of the law in such manner as to secure a jury inimical to the petitioners, and with regard to the existence of *a general prejudice against them in the minds of the court, the jurors, the officials and the people,* are not within the purview of the statute authorizing a removal. The Fourteenth Amendment to the Constitution, which guaranties the equal benefit of the laws on which the present application is based, *only prohibits state legislation violative of said right; it is not directed against individual infringements thereof * * *.* It is only when some such hostile state legislation can be shown to exist, interfering with the party's right of defense, that he can have his cause removed to the federal court." In Kentucky v. Powers, 201 U. S. 1, 26 S. Ct. 387, 50 L. Ed. 633, 5 Ann. Cas. 692, which is

the leading case on the subject of removal in criminal cases, Mr. Justice Harlan cites with approval the language of Mr. Justice Bradley in Ex parte Wells, and speaking for the United States Supreme Court in Gibson v. Mississippi, 162 U. S. 565, 16 S. Ct. 904, 907, 40 L. Ed. 1075, Mr. Justice Harlan said: "When the constitution and laws of a state, as interpreted by its highest judicial tribunal, do not stand in the way of the enforcement of rights secured equally to all citizens of the United States, the possibility that, during the trial of a particular case, the state court may not respect and enforce the right to the equal protection of the laws, constitutes no ground, under the statute, for removing the prosecution into the circuit court of the United States in advance of a trial." This language is likewise approved in Kentucky v. Powers, 201 U. S. 1, 26 S. Ct. 387, 50 L. Ed. 633, 5 Ann. Cas. 692, and in view of the exhaustive treatment of the subject and the numerous citations found in that case further references here are unnecessary.

Since the ruling law is as above stated, it cannot be successfully contended that the conduct or rulings of the Supreme Court justice, either in charging the grand jury or while sitting as president judge of the court of quarter sessions or in conferring with the foreman of the grand jury, or the conduct of the assistant prosecutor, or the conduct of the foreman of the grand jury, or the conduct of others as alleged in the petition for removal, cause the defendants to suffer a denial of their civil rights within the purview of the removal act. If the allegations of the petition disclose errors in the proceedings however harmful, this court will not assume jurisdiction where the acts complained of are unauthorized by the Constitution or laws of the state as interpreted by its court of last resort. For such wrongs the remedy lies in the state courts and ultimately in the United States Supreme Court by writ of error. This then disposes of all of the allegations in the petition except those which are directed to certain statutes of the state and the decisions of the state courts bearing thereon.

The first of these statutes is found in 3 N. J. Comp. 1910, p. 4121. Section 224 of this act deals with the subject of the disqualification of judges, setting forth the following grounds for challenge: (1) Relationship to one of the parties. (2) Interest in the event of such action. (3) Having acted as attorney or counsel for any party to the action. (4) Having rendered a previous opinion in the matter. Section 225 (3 Comp. St. N. J. 1910, p. 4122) deals with procedure, and provides that "challenges to a judge for the causes aforesaid shall be made previous to the trial or argument, and the court may try such challenges or appoint three indifferent persons triors for that purpose at the discretion of the court. * * *"

The defendants herein challenged in writing the Supreme Court justice, presiding judge of the county court of quarter sessions, because, they say, certain acts of his " * * * indicated a state of mind and an opinion contrary to the impartial administration of justice towards these defendants." It is further alleged in the challenge that the acts complained of disclose that the justice "is incapable of rendering an impartial opinion towards these defendants in this matter." The pertinent language of the challenge is quoted, since it is important to ascertain which if any of the statutory grounds of challenge it is intended to cover. If the challenge does not fall within the purview of the statute, then it cannot be said that the statute deprives these defendants of their civil rights within the meaning of the removal act.

It appears from the petition for removal and the challenge that the Supreme Court justice sitting in quarter sessions charged the grand jury in language which defendants contend is so vigorous as to amount to an invasion of their constitutional rights; that it assumed facts not testified to under oath; that it was prejudicial and harmful; that it amounted to a charge to indict them; and that it was in fact an expression of opinion by the justice as to the guilt of the defendants. It further appears that the justice conferred with the foreman of the grand jury in the absence of the rest of the grand jury and discussed with him the returning of an indictment against the defendants, by virtue of which an indictment was returned against them.

A notice of motion to quash the indictment was served upon the prosecutor, and subpœnas to testify were served upon the members of the grand jury and upon the Supreme Court justice and the prosecutor as well. On the return day the justice, who, by virtue of his office is the presiding judge of quarter sessions, sat with the member of the court specially named in the notice of motion. The proceedings were opened by the following statement from the justice: "I am now sitting with Judge Harley as the Court of Quarter Sessions. There is nothing before the court. Notices of motion to quash these indictments have been served on the Prosecutor, we will determine what is to be done in this matter and let you know tomor-

row A. M. And if you don't know it I will tell you, you have no right to subpœna a Supreme Court Justice while Supreme Court is in session." Counsel for defendants were refused · permission to speak on this occasion.

On the following day the court again convened as before, and counsel for defendants were refused permission to speak; the court ordering them to be seated, informing them at the same time that the defendants' rights would be protected. Whereupon, the justice speaking for the court delivered the following opinion: "This is a motion to quash six indictments. The motion addressed to the court is one of discretion. It is never exercised except in a clear case. There have been thirty-four reasons or points urged why these indictments should be quashed. We have examined them critically and with care, and we find no reason for quashing these indictments. The conclusion of the court is that this motion should be denied. * * * An exception may be entered to the ruling of the court, if that be necessary." Counsel for defendants again at this point addressed the court in an attempt to be heard, but the justice, not desiring to be interrupted, refused such permission and proceeded as follows:

"Passaic County Quarter Sessions.

"In the matter of Charles C. Black, a Witness.

"In this case there was a subpœna issued from this Court, dated October 2nd, returnable October 4th. It was served upon me October 3rd, while the Supreme Court in its October Term was in session. No communication had been made to me as to what my official appointments were. No inquiry had been made of me as to what evidence I could give. Believing that all subpœnaes from the Court, in form, should be obeyed. I obeyed this subpœna and was in attendance. There was no question asked of me whether or not I might not be in the Court of Errors, constituting a quorum, or hearing a murder case. All these finer practices of etiquette and courtesy due from the Bar to the Court were ignored. If it were a matter that was personal to me alone it would be passed without comment; but I am unwilling that my associates should be subjected to this kind of treatment without a protest.

"But this is not all. In obedience to this writ, after consultation with my associates, I found there was nothing officially pending before them, no issue, no time set for any hearing, and the only evidence that we had

was a notice to the Prosecutor's office that certain motions would be made. The natural question arises, Why was this writ issued to compel the Presiding Judge of his own Court to appear at the convenience of counsel? This is such a gross violation of the process of this Court that if it had not been obeyed by attendance it would be set aside as an abuse of the process of the Courts. Why was it issued? The fine spirit of the Passaic County Bar may answer that question. This Court says that it was an abuse of the process of the Courts and it is a proper subject of investigation for the Supreme Court.

"Make two copies of that and send it to me, Mr. Kelley.

"Is there anything now before the Court —any other matter before the Quarter Sessions?"

"Mr. Matthews: May I be heard now, if your Honor please? You said a moment ago, your Honor, when I interrupted that our rights would be protected. I desired to file a plea with your Honor in limine of this motion, and not to interrupt your Honor personally. With your permission I would like to hand your Honor the plea.

"Mr. Justice Black: You do not have to have permission of the Court to file it.

"Mr. Matthews: May I please file it? Oh, I do not have to. Well, I will file it without permission.

"Mr. Justice Black: Any other matter before the Quarter Sessions?

"Mr. Matthews: Pardon a minute. May I be permitted just one word on the proposition of fixing the motion in your Honor's matter without the motion day being fixed?

"Mr. Justice Black: I do not care to hear that. I will hear you next Saturday at my office, if you care to make any."

The document referred to above as a plea in limine was the challenge hereinbefore mentioned. No witnesses were sworn and no testimony was taken. Subsequently a short memorandum opinion in writing was filed by the judge of the quarter sessions refusing to quash the indictments. There are further allegations of like tenor and effect in the petition for removal, as well as in the challenge, which I do not deem it important to recite. This recital, however, has seemed necessary and pertinent as having a bearing upon the form and substance of the challenge and is set forth here only for the purpose of ascertaining the ground upon which the challenge lies.

The defendants take the position that the situation above outlined constitutes bias,

prejudice, and personal interest on the part of the justice. Assuming solely for purposes of this motion that it does: Which one, if any, of the grounds of challenge mentioned in the Practice Act then becomes operative? It does not appear that the justice is related to any one of the parties. He has not been attorney or of counsel for any of them, nor has he rendered any previous opinion in the matter. The only one, then, upon which an argument may be predicated on this issue, is: Was he interested in the event of the action?

The New Jersey act relating to challenges—at least that portion of it which is raised here—has been in the statutes of the state since 1797, see Paterson's Laws 1800, p. 254, and the courts have many times passed upon its meaning.

In State v. Bolitho, 103 N. J. Law, 246, 136 A. 164, 168, Justice Kalisch, speaking for the New Jersey Supreme Court, said: "We may safely assume that every law-abiding citizen is naturally at war with violators of the law and hence is more or less interested in the suppression of crime, which interest springs, not only from a sense of self-protection, but also from a duty to protect the community as well, against unlawful acts of its members, and therefore it is quite obvious that, in order to entertain the notion stressed in the brief of counsel of plaintiff in error, we would be driven to the ludicrous declaration that such an interest, as above indicated, disqualifies a judge or juror from sitting in judgment, impartially, between the state and the accused. Such a course would deal a disastrous blow to our judicial system."

It therefore clearly appears that the courts of New Jersey do not consider judicial activities such as are outlined by Mr. Justice Kalisch, in the above case, as constituting such an interest in a pending cause as to come within the purview of section 224 of the Practice Act (3 Comp. St. N. J. 1910, p. 4121, § 224).

In Ex parte Hague (N. J. Ch.) 143 A. 836, 838, Chancellor Walker says:

"While a judge should never commit himself upon any question either of fact or law which is liable to come before him until the matter is properly presented, mere expressions showing irritation, or unnecessary expression of opinion upon the justice or merits of a controversy, is not per se ground for disqualification. 33 C. J. p. 1009.

"Again, the interest which disqualifies a judge is a direct pecuniary one, or one which involves some individual right or prejudice in the subject-matter of the litigation. Id. p. 992."

It appears in the foregoing opinion that section 224 of the Practice Act was brought to the attention of the Chancellor, and he said of it: "I am free to say that I give effect to this law in the Court of Chancery, and hold by analogy that it applies here. * * *" And he further cites with approval the following language from County Com'rs v. Eastern Shore Trust Company, 131 Md. 175, 101 A. 686: "The constitution or statutes of most, if not all, of the different States contain a general provision to the effect that a judge shall not act as such in a cause in which he is interested, but the overwhelming weight of authority in construing the meaning that is to be attached to the provision is, that to bring about a disqualification, the interest must be a pecuniary or a personal right or privilege in some way dependent upon the result of the case as contradistinguished from every bias, partiality or prejudice which the judge may entertain with reference to the case."

Such then being the statutory law in this state as interpreted by the courts of the state, it cannot be said that anything appearing in this case brings these defendants within the provisions of section 224 of the Practice Act. Surely if the rulings of the justice are erroneous, if he has ruled when there was nothing legally before him, if he has, by his attitude, shown bias and prejudice, there is nothing in the statute complained of which authorizes the same and it is in this light that the statute is examined here.

Counsel for the defendants, and one of the defendants who is himself a lawyer, have made strong and convincing arguments touching on section 225 of the Practice Act wherein it appears that a judge challenged under section 224 is authorized to sit in judgment of himself as to his own qualifications. However abhorrent this authorization may be to a logical sense of justice, it has no bearing here, since section 224 does not apply.

The next statutory question raised was abandoned by counsel for defendants, but the defendant Harry Weinberger pro se argued that under the provisions of P. L. N. J. 1895, p. 162, he is deprived of his civil rights, in that, under the aforesaid act, he testified before a legislative investigating commission, and the evidence given by him before said commission was subsequently used for the purpose of obtaining the indictment against him, and this, when coupled with the refusal of the court of quarter sessions to quash the indictment, discloses a system of state laws in denial of his civil rights.

The essential portion of the statute is as follows: "All witnesses sworn or affirmed before such committee shall truly answer all questions * * * and no witness shall be excused from answering any such question on the ground that to answer the same might or would incriminate him, or tend to criminate him; but no answer made by any witness to any such question shall be used or admitted in evidence in any proceeding against him, except in case of a criminal proceeding for perjury in respect to his answer to such questions."

The state contends, among other things, that inasmuch as there is nothing in the record here to show what the evidence was before the grand jury or what the evidence was before the commission, there is nothing to be passed upon. In other words, that defendant's point is insufficiently pleaded, in that it is dependent on matter dehors the record. I am inclined to this view, but a much stronger reason for refusing to sustain defendant's contention appears in the language of the statute itself. Clearly, this act was passed for the very purpose of preventing the use of such evidence as defendant claims was used. The New Jersey Court of Errors and Appeals, in State v. Zdanowicz, 69 N. J. Law, 619, 55 A. 743, 744, lays down an analogous rule in this language: "In New Jersey no person can be compelled to be a witness against himself." It therefore does not appear that either the statute laws of the state or the decisions of the state court of last resort are inimical to defendant's rights within the meaning of the removal act.

Viewing the entire record, I find nothing to sustain the removal of the case to this court. An order remanding the same will therefore be entered. The argument here embraced five additional indictments against the defendant Harry H. Weinberger. They will each take the like course.