CITY OF CLARKSDALE, MISSISSIPPI,

v.

Marie GERTGE.

No. DCR6448.

United States District Court
N. D. Mississippi,
Delta Division.

Dec. 23, 1964.

**214**

James A. Phyfer, Clarksdale, Miss., for City of Clarksdale.

Henry M. Aronson, Jackson, Miss., Bertram Perkel, Hooks, Willis & Sugarmon, Memphis, Tenn., for defendant.

CLAYTON, District Judge.

This case originated in this court by the filing of a petition pursuant to 28 U.S.C. § 1443 to remove a criminal prosecution from the Police Court of the City of Clarksdale, Mississippi. Clarksdale filed a motion to remand and that motion is before the court for disposition on briefs which are directed to the face of the papers. The motion will be so considered.

The petition recites that petitioner is a white female affiliated with a civil rights organization, that she was arrested and charged with violating a city ordinance in that she was accused of taking a photograph within the Clarksdale City Hall without the permission of the Mayor and Commissioners of that city, that she was later released on $100 cash bail, and that her prosecution for this offense is pending in the Clarksdale Police Court, but that she has not yet been tried. As grounds for removal, it is alleged that petitioner was present in Clarksdale as a participant in a voter registration drive directed at Negroes and that her arrest and prosecution were for the purpose of harassing her and preventing her from carrying on lawful and constitutionally protected activities in the voter registration drive, pursuant to a policy of discrimination which is encouraged and enforced by all three branches of the state government. Prevailing community opinion is alleged to be hostile to petitioner and other civil rights workers, making it impossible for her to employ a member of the Mississippi Bar to represent her.

The petition alleges that the Police Court of Clarksdale and the Circuit Court of Coahoma County[1] are hostile to petitioner by reason of the commitment of those courts to enforce the state's

---

1. The circuit court is apparently included on the mistaken belief that an appeal would lie there for trial *de novo* upon conviction in the police court. Coahoma County has a county court to which such an appeal would lie in the first instance.

policy of racial segregation, which is allegedly demonstrated by maintenance of racially segregated courtrooms and by the practice of addressing Negro witnesses and attorneys by their first names, in violation of the equal protection clause of the Fourteenth Amendment; by the election of judges at elections in which Negroes have been denied the right to vote, in violation of the Fifteenth Amendment; by systematic exclusion of Negroes from juries by reason of race, in violation of the Sixth and Fourteenth Amendments; and by the exactment of excessive, exorbitant and discriminatory bail in the cases of defendants charged with offenses arising out of the exercise of their equal civil rights, in violation of the Eighth and Fourteenth Amendments.

As a result of the foregoing, petitioner claims she is being prosecuted for acts done under color of authority derived from the federal Constitution and laws providing for equal rights, particularly the First, Fourteenth and Fifteenth Amendments to the Constitution and 42 U.S.C. §§ 1971, 1983 and 1985. She allegedly has been and is being denied, and cannot enforce in the courts of the State of Mississippi, rights under the said federal constitutional and statutory provisions for equal rights of citizens of the United States and of all persons within the jurisdiction of the United States.

Clarksdale's motion to remand is on the ground that the petition does not show on its face that petitioner was or is being deprived of any equal civil right by any substantive or procedural rule of law of the State of Mississippi or any ordinance of the City of Clarksdale, and that absent such a showing, this court is without jurisdiction under 28 U.S.C. § 1443. That statute reads:

Any of the following civil actions or criminal prosecutions, commenced in a State Court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;

(2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.

The question of whether there is a right to remove or not is jurisdictional. Thus, congressional authority must be found for this court's assumption of jurisdiction. Absent such authority, the right must be denied regardless of the persuasiveness of petitioner's appeal for aid. Here, perhaps more than in many other areas of federal jurisdiction, the delicate balance of a federal system is at stake and for this reason it has been repeatedly held that the removal statutes must be strictly construed. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941).

I.

■ Under subsection (1) of the statute, a state criminal prosecution may be removed by the defendant if he "is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States." Since 28 U.S.C. § 1446(c) requires removal of criminal prosecutions under § 1443 to be effected before trial, the facts upon which the right to remove depends must be such as will appear before trial. The petition must allege before trial that the state court *will* deny petitioner's rights on trial.

■ The presumption that courts of competent jurisdiction will obey the rules of law applicable to litigation before them, not only precludes a federal court

from surmising that the state court will unlawfully discriminate against a defendant or that it will fail to correct injustices perpetrated by others in the course of a criminal prosecution, but the presumption also requires the federal court to act upon the expectation that the state court will be governed by the state constitution and statutes, as construed by the highest court of the state. It follows that the only standard for invoking jurisdiction under 28 U.S.C. § 1443(1) is a finding that petitioner will be denied a federally guaranteed equal civil right on trial as a result of the state constitution, a statute, municipal ordinance, rule of court or other regulatory provision binding on the court in petitioner's trial so that the state court may be presumed in advance to obey such discriminatory provision. If no such deprivation of right is shown and remand is ordered, petitioner is not without remedy. If, contrary to the presumption, the state court permits an infringement of the petitioner's equal civil rights, he may seek relief on appeal to the higher courts of the state, and, ultimately, if necessary, to the United States Supreme Court.

■■ The foregoing rationale is the foundation of those decisions which have repeatedly construed subsection (1) with such consistency that certain principles may be taken as settled. In order to authorize a removal, a violation of the equal protection clause of the Fourteenth Amendment must be shown. The fact that other rights guaranteed by the Fourteenth Amendment are violated will not authorize a removal where the procedure adopted by the state authorities is applied equally to all citizens, Steele v. Superior Court of California, 164 F. 2d 781 (9th Cir.1948). The denial of right must result from provisions of the state constitution or statutes as construed by the highest court of the state, which deny or prevent the enforcement of equal rights secured to the defendant by the Constitutional or laws of the United States, rather than through the illegal and discriminatory acts of state

officials or individuals where such acts are not authorized by state law. Virginia. v. Rives, 100 U.S. 313, 25 L.Ed. 667 (1879); Kentucky v. Powers, 201 U.S. 1, 26 S.Ct. 387, 50 L.Ed. 633 (1905). Where the denial of rights arises from such wrongful acts of state officials, not authorized by state law, the remedy is. to be found in the state courts, trial and appellate, and ultimately in the Supreme Court of the United States, if necessary. Hull v. Jackson County Circuit Court, 138 F.2d 820 (6th Cir.1943).

Petitioner takes issue with these principles, however, and argues that Congress, in enacting the predecessor of 28 U.S.C. § 1443 (Act of April 9, 1866, ch. 31, § 3, 14 Stat. 27) intended that fundamental unfairness in the operation of state courts should serve as a basis for removal, and (petitioner implies) that restrictive constructions of the statute by the Supreme Court in the latter part of the nineteenth century deviated from the intent of Congress by unduly emphasizing the necessity for a state statutory or constitutional infringement on equal rights; that these restrictions were nevertheless not absolute but would permit removal without such infringement if the fact that petitioner's rights would be denied in the state court could be shown with a sufficient degree of certainty, and that recent decisions of the Supreme Court in the area of civil rights indicate a purpose to allow a more liberal interpretation of congressional legislation designed to protect equal civil rights.

The first definitive construction of the civil rights removal statute was in Virginia v. Rives, supra. In that case, petitioners for removal alleged that they were Negroes charged with the murder of a white man in a community in which strong racial prejudice existed; that the grand jury which indicted them and the jurors summoned to try them were all white; that the court had refused a request for placement of a number of Negroes on the trial jury; and that, notwithstanding that state laws required jury service of males without discrimi-

nation as to race, Negroes had never been allowed to serve as jurors in the county. The court observed that there was no claim of a discriminatory state constitutional or statutory provision, and that if the officer charged with selection of venirement had disregarded the state law so as to exclude Negroes because of race, he violated both state and federal law. Such criminal misuse of state law could not be said to be "such a 'denial or disability to enforce in the judicial tribunals of the State' the rights of colored men, as is contemplated by the removal statute." In that case, the court, inter alia, said:

> It is to be observed that act gives the right of removal only to a person "who is denied, or cannot enforce, in the judicial tribunals of the State his equal civil rights." And this is to appear before trial. When a statute of the State denies his right, or interposes a bar to his enforcing it, in the judicial tribunals, the presumption is fair that they will be controlled by it in their decisions; and in such case a defendant may affirm on oath what is necessary for removal . . . .. But when a subordinate officer of the State, in violation of State law, undertakes to deprive an accused party of a right which the statute law accords him, as in the case at bar, it can hardly be said that he is denied, or cannot enforce, "in the judicial tribunals of the state" the rights which belong to him. In such a case it ought to be presumed the court will redress the wrong . . . .. [But, if not] the error will be corrected in a superior court . . . .. Denial of equal rights in the action of the judicial tribunals of the State are left to the revisory powers of this court . . . ..

Such explicit language does not suggest that the Court envisioned circumstances other than legislative denial of rights which would permit removal. If there could be any doubt, it must be regarded as settled by decisions such as Gibson v. Mississippi, 162 U.S. 565, 16 S.Ct. 904, 40 L.Ed. 1075 (1896), where removal was denied with this language:

> [I]t is clear that the accused in the present case was not entitled to have the case removed . . . . unless he was denied, by the constitution or laws of Mississippi, some of the fundamental rights of life or liberty that were guarantied to other citizens resident in that state.

> [The application for removal is improper] for the reason that neither the constitution of Mississippi nor the statutes of that state prescribe any rule for, or mode of procedure in, the trial of criminal cases which is not equally applicable to all citizens of the United States . . . ..

Gibson v. Mississippi, supra; Neal v. Delaware, 103 U.S. 370, 26 L.Ed. 567 (1881); and Bush v. Kentucky, 107 U.S. 110, 1 S.Ct. 625, 27 L.Ed. 354 (1883), all of which contained similar language, were reviewed by the Supreme Court in Kentucky v. Powers, supra:

> In each of these cases it was distinctly adjudged, in harmony with previous cases, that the words in § 641—"who is denied or cannot enforce in the judicial tribunals of the state . . . any right secured to him by any law providing for the equal civil rights . . ." did not give the right of removal, unless the Constitution or the laws of the state in which the criminal prosecution was pending denied or prevented the enforcement in the judicial tribunals of such state of the equal rights of the accused as secured by any law of the United States. Those cases, as did the prior ones, expressly held that there was no right of removal under § 641, where the alleged discrimination against the accused, in respect of his equal rights, was due to the illegal or corrupt acts of administrative officers, unauthorized by the Constitution or laws of the state, as interpreted by its highest court.

This case, Kentucky v. Powers, was the last full scale examination of the removal statute by the Supreme Court, and it has frequently been denominated the leading case on the subject. No case has been found in which the court has suggested that the rule stated in Powers should in any way be modified. The lower federal courts, however, have had more recent opportunities to consider the statute and the unanimity with which they have followed the restrictive view announced in Powers is significant.

In State of North Carolina v. Alston, 227 F.Supp. 887 (M.D.N.C.1964), two-hundred seventeen Negro and white civil rights workers were charged with one-hundred ninety-two criminal trespass offenses and five-hundred forty-two other offenses. Petitioning for removal, they alleged that the charges had arisen from their efforts to obtain service in licensed premises of public accommodation (this case was decided prior to the enactment of the Civil Rights Act of 1964); that their presence was objected to solely because of race; that the state courts were inappropriate forums for the redress of their constitutional rights; and that a trial in state court would be a deprivation of the federally guaranteed equal rights. Petitioners argued that the use of state criminal trespass statutes as an aid to the enforcement of private discrimination deprived them of equal rights. Sustaining a motion to remand, the district court said:

It is well settled that 28 U.S.C.A. § 1443 authorizes the removal of a criminal case from a state court to a Federal court "only when the constitution or laws of the state deny or prevent the enforcement of equal rights secured to a party by the Constitution or laws of the United States, and not where the equal civil rights of citizens are recognized or are not denied by the constitution or laws of the state." 76 C.J.S. Removal of Causes § 94. . . . .
"There is no right of removal under the statute where the alleged denial of, or inability to enforce, any such

right results from the corrupt, illegal, or unauthorized administration of a state Constitution or laws which are not discriminatory and apply to all citizens alike." 45 Am.Jur. Removal of Causes § 109.

\* \* \* \* \* \*

In summary, since no discriminatory state statutes or constitutional provisions are claimed, it is abundantly clear that the petitioners must look to the state courts for the protection of any rights they might have under the Constitution and laws of the United States.

See also, Steele v. Superior Court of California, supra; State of New Jersey v. Weinberger, 38 F.2d 298 (D.C.N.J. 1930); In re Hagewood, 200 F.Supp. 140 (D.Mich.1961); City of Birmingham v. Croskey, 217 F.Supp. 947 (N.D.Ala. 1963); State of Arkansas v. Howard, 218 F.Supp. 626 (E.D.Ark.1963); Anderson v. State of Tennessee, 228 F. Supp. 207 (E.D.Tenn.1963); and State of Alabama v. Shine, 233 F.Supp 371 (M.D.Ala.1964).

Assuming arguendo the truth of petitioner's assertion that the enacting Congress did not intend this restrictive construction of the statute, and that the courts misconceived the legislative purpose, it seems fruitless to consider this point after nearly a century of judicial construction importing a contrary view. At this date it would appear that nothing short of an act of Congress could reestablish the supposed original intent of that body. The very absence of such new legislation in the face of long continued judicial rejection of that view is perhaps most significant of all in rebutting the proposition that Congress intended the federal courts to assume removal jurisdiction of state criminal prosecutions on petitions alleging that local officials would illegally discriminate in the application of non-discriminatory state laws. The several civil rights acts of the last few years, while considering in detail legislative solutions to the problems created by racial prejudice, have made no attempt to redefine the scope of

28 U.S.C. § 1443. Indeed, the framers of the Civil Rights Act of 1964, Pub.L. 88–352 (1964), had occasion to consider the removal statute in the amendment to 28 U.S.C. § 1447, providing that remand orders under 28 U.S.C. § 1443 should be reviewable on appeal, but in so doing they made no alteration whatsoever in the form of the removal statute itself.

Assuming further the truth of petitioner's contention that the Supreme Court in Virginia v. Rives, supra, did not make legislative denial of equal rights an inflexible prerequisite to removal but instead required only substantial certainty of such denial, it is clear from the quotations above and cases cited that the decision was not so regarded by subsequent courts. It also appears that the courts have had difficulty imagining circumstances short of legislative denial of rights which would attain that degree of certainty justifying removal, since no case has been brought to this court's attention where such circumstances have been judicially approved even in hypothesis.

■ Examination of the petition here compels the conclusion that it does not sufficiently state grounds for removal under 28 U.S.C. § 1443(1). Even if the petitioner's arrest was carried out as a harassing tactic in furtherance of a policy of discrimination, that fact does not entitle petitioner to remove because such practices are not only not required by state law but indeed would be gross violations of that law. The evil complained of (if it actually exists) amounts to "criminal misuse of state law" by public officials which is not such a denial or disability to enforce in the state courts petitioner's equal civil rights as would support removal. Her remedy is in the state courts. Virginia v. Rives, supra.

The ordinance[2] upon which petitioner's prosecution rests is not discriminatory so as to support removal. It is readily apparent that this ordinance does not discriminate against petitioner, any class of which she is a member, or any class at all. The restrictions on various types of recording and transmission activities are made applicable to "any person, or persons." Clearly no violation of the equal protection clause of the Fourteenth Amendment appears on the face of the ordinance.

■ The existence of public hostility to petitioner which will deprive her of a fair trial is not required by a state constitutional provision or statute. In fact, state law provides for change of venue in criminal cases to eliminate that element. Local prejudice against a defendant in the state courts is not an adequate ground for removal. Rand v. Arkansas, 191 F.Supp. 20 (W.D. Ark.1961). Inability to retain local counsel because of such local hostility is again not a deprivation of right traceable to the constitution or laws of Mississippi. It may be noted that the duties of Mississippi attorneys include the following:

> It is the duty of attorneys:
>
> \*   \*   \*   \*   \*   \*
>
> (7) Never to reject, for any consideration personal to themselves, the cause of the defenseless or oppressed. Mississippi Code Ann. 1942 (Recompiled) § 8665.

2. Section 14–8.1, Code of Ordinances of the City of Clarksdale, Mississippi.

(a) It shall be unlawful for any person, or persons, to make voice or other sound recordings or transmissions of voice or other sounds by radio, or other sound media, or to take photographs, still pictures, motion pictures or television pictures within any building belonging to the City of Clarksdale, Mississippi, or any other property belonging to said City, without the prior permission of the board of mayor and commissioners of the City of Clarksdale, Mississippi.

(b) Any persons violating any of the provisions of this section shall be guilty of a misdemeanor and be punishable by a fine of not more than one hundred dollars ($100.00) or by imprisonment in the City of Clarksdale, Mississippi jail for not more than thirty (30) days, or by both such fine and imprisonment.

█ It is not alleged that the practice of segregated seating in state courtrooms is maintained under provisions of the state constitution or statutes or other regulatory provision, and this ground is thus insufficient. For the same reasons, the alleged practice of improperly addressing Negro witnesses and attorneys in the state courts does not entitle petitioner to bring her case to the federal courts.

█ The exclusion of Negroes from the elections at which state judges are elected is not ground for removal since there are no state laws which limit the right of Negroes to vote in Mississippi because of their race. City of Birmingham v. Croskey, supra. For identical reasons, alleged systematic exclusion of Negroes from service on state juries is insufficient. Gibson v. Mississippi, supra; and the requirement of excessive bond in civil rights cases, which is not permitted by state law, does not serve to bring the case to this court.

In summary, the existence of these illegalities, even if true, is neither required, permitted or condoned by the laws of Mississippi and under the settled law it would be improper for this court to find that petitioner will be denied or unable to enforce in the courts of the state her equal civil rights as a United States citizen. Insofar as it depends upon 28 U.S.C. § 1443(1), the removal was improvident and this court is without jurisdiction.

## II.

The petition also alleges that petitioner is being prosecuted for acts done under color of authority derived from laws providing for equal rights, and thus that she is entitled to remove under 28 U.S.C. § 1443(2).

Petitioner invokes all statutory and constitutional provisions which can be said to provide for equal rights, but she lays emphasis in her brief on 42 U.S.C. §§ 1981, 1983 and 1985. It is contended that these statutes create or protect certain equal civil rights; that while engaged in the campaign for the promotion of the equal civil rights of Negoes in Mississippi, she was herself exercising rights which are protected by those statutes; that both her general activities in that campaign and the specific act for which she was arrested were acts under the color of authority of laws providing for equal rights; and that she is being prosecuted "because of her activities as a COFO worker. These activities have subjected her to the hostility of state and local government officials and law enforcement authorities and have resulted in a denial of her right to conduct herself peaceably and quietly on public property." In short, she contends that she was exercising rights under the various civil rights statutes, thereby incurring the hostility of state and local officials, so that such officials were motivated to prosecute her for those acts and that "Congress has authorized removal to the federal courts of any state prosecution brought against individuals for the exercise of rights under the various civil rights acts."

█ The specific issue here is whether petitioner has alleged facts from which it can be said that she is being prosecuted for acts done under color of authority derived from any law providing for equal civil rights, within the meaning of 28 U.S.C. § 1443(2). "Color of authority" is a phrase of art in the law. It is defined in 15 C.J.S. Color, p. 235, as follows:

> *Color of authority.* Authority derived from an election or appointment, however irregular or informal, so that the incumbent be not a mere volunteer.

From this accepted meaning of this phrase, removal is not available under subsection (2) unless the act for which the state prosecution is brought was done in at least a quasi-official capacity derived from a law providing for equal rights. Neither the constitution nor the statutes cited by petitioner purport to grant her any authority to act in any official capacity so as to entitle her to remove a state prosecution instituted because of such acts. The mere exercise

of rights created or protected by federal civil rights statutes does not spread a cloak of immunity from state prosecution over persons who, by the acts involved in such exercise of their equal civil rights, also violate state law.

The almost total absence of judicial interpretation of subsection (2) lends credence to this view. During its century of existence, subsection (2) and its predecessors have not been regarded by the bench and bar as authorizing removal in the circumstances here. This inference is compelled when consideration is given to the fact that in most, if not all, of the removal cases cited earlier in this opinion, the petitioner there had equally as good grounds as petitioner here to invoke subsection (2), if petitioner's view of the statute is valid. Yet, the point was never raised until recently. Obviously, the legal profession has regarded subsection (2) as being unavailable to private individuals who are being prosecuted for acts which are claimed to amount to exercise of their federal equal civil rights.

The difficulty with petitioner's construction of the statute is that it proves too much. Adoption of petitioner's view would so extend the operation of subsection (2) that it would eliminate, as a practical matter, the functions of the state courts. For example, the first statute cited by petitioner, 42 U.S.C. § 1981, reads as follows:

> All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

It must be noted first that the guilt or innocence of the petitioner is immaterial. That issue would not be open for consideration until it had first been determined that this court had jurisdiction. With this in mind, it must be observed that § 1981 grants to all persons within the jurisdiction of the United States a guaranty of equal protection of the law. In effect, it is the implementing statute of the equal protection clause of the Fourteenth Amendment. Under petitioner's view, any person who exercised a right so protected, and for such exercise was prosecuted in the state court, would be entitled to remove under subsection (2). Thus, the "laws and proceedings for the security of persons" to which all persons shall have the same right generally include the right to use necessary force in self defense when attacked. If the mere exercise of such a right entitles one to removal of a state prosecution brought because of that act, then any person charged with assault and battery who relied on self defense as a defense would be entitled to remove, regardless of his guilt or innocence.

Such a construction seems absurd. Perhaps petitioner would modify it by reading in limitations to prevent the extreme application illustrated. Such limitations might include the existence of local prejudice against the petitioner, proof of discriminatory practices of local authorities against the class of which petitioner is a member, the character of the activity in which petitioner was engaged when the alleged crime was committed, or even the motivation of the prosecutor in bringing the action. Insofar as such modifications suggest that removal would be available to only a particular class of state criminal defendants, possible issues of constitutional propriety are raised. It is enough to say, however, that such modifications are so speculative with respect to the probable intent of Congress that they should issue from that branch of the government rather than this.

This court is of the opinion that Congress did not intend such a strained, impractical construction of the statute, but rather intended to follow the accepted

use of the phrase, "color of authority," granting the right of removal to persons acting in an official or quasi-official capacity.

Since it is apparent that petitioner was *acting only as a private individual,* the removal of her prosecution from the Police Court of the City of Clarksdale to this court on the basis of subsection (2) was also improvident and this court is without jurisdiction.

It follows that the motion to remand is well taken and will be sustained.

An order will be entered in accordance with this opinion to remand this case to the court from which it was improperly removed.