The PEOPLE OF the STATE OF MICHIGAN, Plaintiff,

v.

David BARNARD, Delmar A. Jackson, Larry E. Collins, Phyllis E. Erfurt, Richard N. Hutchinson, Martha M. Mason, Judy B. Weissman, Defendants.

No. 26019.

United States District Court
E. D. Michigan, S. D.

March 16, 1965.

---

20. 6 Moore's Federal Practice ¶ 56.17[4], et 2178 (2d ed. 1953).

Police Department was located, to protest alleged police brutality toward Negroes. The petition alleges that the picketing had proceeded peacefully for an hour and "was in the process of breaking up" when a fireman from a nearby fire station, pushing a grocery cart, "collided with the picket line" and was thereupon hit on the back of the head by one of the pickets, and was "then separated from several of the pickets" by another picket, Delmar Jackson, one of the petitioners; that other firemen from the fire station then ran to the scene of the incident and entered into an argument with some of the pickets; that several policemen "ran out of the City Hall and began taking the Petitioners into the station on the theory that they were preserving the peace"; and that petitioners, believing they were being arrested illegally, resisted the attempts of the officers to take them into the station. Three days later, petitioners were arraigned in the Ann Arbor Municipal Court on charges of (1) obstructing the public passage, in violation of a city ordinance, and (2) obstructing, resisting and opposing police officers in the performance of their lawful duty, in violation of a state statute. Petitioners were subsequently acquitted on a jury trial of the alleged ordinance violation.

M.S.A. § 28.747, Comp.Laws 1948, § 750.479, the State statute upon which the prosecution in the instant case is based, reads in pertinent part as follows:

> "Any person who shall knowingly and wilfully obstruct, resist or oppose any sheriff, coroner, township treasurer, constable or other officer or person duly authorized, in serving, or attempting to serve or execute any process, rule or order made or issued by lawful authority, * * * or who shall so obstruct, resist, oppose, assault, beat or wound any of the above named officers, or any other person or persons authorized by law to maintain and preserve the peace, in their lawful acts, attempts and efforts to maintain, preserve and keep the peace, shall be guilty of a misdemeanor, punishable by impris-

Sol Plafkin, Eddie D. Smith, Detroit, Mich., for petitioners.

William F. Delhey, Pros. Atty., Washtenaw County, Ann Arbor, Mich., for People of State of Michigan.

James T. Lafferty, Detroit, Mich., submitted brief as amicus curiae for National Lawyers Guild.

FREEMAN, District Judge.

This is a petition for removal of a criminal prosecution from the Circuit Court of Washtenaw County, Michigan, or, in the alternative, a proceeding under the Civil Rights Act, 42 U.S.C. § 1983, for injunctive relief to restrain the State prosecution.

These proceedings arise out of a picketing incident in front of the City Hall at Ann Arbor, Michigan, on February 28, 1964. Petitioners were all members of the Direct Action Committee (DAC), a local civil rights organization, which was picketing the city hall, in which the

onment in the state prison not more than two [2] years, or by a fine of not more than one thousand [1,000] dollars."

Petitioners have filed a petition for removal of the state prosecution to this court, based on 28 U.S.C. § 1443(2), which reads as follows:

"Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

* * * * * *

"(2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law."

The theory of the petition for removal is that the prosecution is designed to penalize the petitioners for asserting their rights of free speech and assembly under the first and fourteenth amendments to the federal constitution. More specifically, petitioners contend that picketing the city hall is an "act under color of authority derived from any law providing for equal rights"—in this case, the first and fourteenth amendments. Petitioners further contend that they were arrested for picketing, rather than for a breach of the peace, and that they resisted arrest because they reasonably believed that arrest was an illegal deprivation of their constitutional rights of free speech and assembly. The removal petition states that the action of the prosecutor and police officers has been "designed to harass, intimidate, and abuse the Petitioners in their exercise of their lawful rights to speak, assemble, and demonstrate in behalf of civil rights as guaranteed by the First and Fourteenth Amendments of the United States Constitution."

This matter is now before the court on a motion for remand of the criminal case to the state court, and also on a motion to dismiss petitioners' alternative action under the Civil Rights Act for an injunction to restrain the state prosecution.

The motion for remand is based on the ground that section 1443(2) is inapplicable, in that the state prosecution is not for any act which was committed under color of authority derived from any law providing for equal rights. The prosecutor argues also that no state law is alleged in the removal petition to have denied or prevented the enforcement of defendant's rights, and, therefore, removal is not available under section 1443. However, this argument is based on cases construing section 1443(1), and is, therefore, not necessarily relevant to a removal petition based on section 1443(2).

Petitioners in this case are not being prosecuted for picketing the city hall. They face state prosecution for obstructing and resisting police officers in the performance of their duty of preserving the peace. Therefore, in order for the state prosecution to be removable to federal court under section 1443(2), the act of resisting the officer is the act which must be "under color of authority derived from any law providing for equal rights." The case is not removable merely because picketing may be under color of authority of the first and fourteenth amendments, since picketing is not the act for which petitioners are facing State prosecution.

It appears from the removal petition itself that the action of the police officers and the prosecutor was not in derogation of the petitioners' constitutional right to picket. The petition states that picketing proceeded for an hour without any interference by the police. The police took action only after a fireman collided with the picket line and was assaulted by one of the pickets. At this time, another picket was physically restraining the fireman who had been struck, and other firemen from the fire station were arguing with the pickets. At this point, when some violence had already occurred and further violence may well have seemed imminent, the police "*asked* (with simultaneous grabbing of the petitioners) the

pickets to come into the police station" (p. 7, petitioners' brief). The action of the police officers appears on its face to have been designed to preserve the peace, which was threatened by the altercation between the pickets and the firemen. The fact that the pickets refused to co-operate with the police at this juncture led to the prosecution which they now seek to remove to this court.

Petitioners rely on Edwards v. South Carolina, 372 U.S. 229, 83 S.Ct. 680, 9 L. Ed.2d 697 (1963), in support of removal. In that case the Supreme Court held that South Carolina infringed petitioners' rights of free speech and assembly in arresting and convicting petitioners under the circumstances of the case. Petitioners were demonstrating on behalf of civil rights for Negroes before the South Carolina State House, when they were informed by police that they must disperse on pain of arrest. Petitioners refused to disperse and began to sing patriotic and religious songs. There was no violence or threat of violence on their part, or on the part of any member of the crowd watching them. Police protection was ample, according to the City Manager. Petitioners were convicted of breach of the peace upon evidence which, according to the court, showed no more than that the opinions which they were peaceably expressing were sufficiently opposed to the views of the majority of the community to attract a crowd and necessitate police protection.

The situation in the instant case is closer to the situation in Feiner v. People of State of New York, 340 U.S. 315, 71 S.Ct. 303, 95 L.Ed. 267 (1951), than to the one in Edwards. In Feiner, the petitioner was convicted of disorderly conduct in alleged violation of his right of free speech. Feiner was making a vigorous speech to a group of 75 or 80 Negroes and whites, urging Negroes to rise up in arms for equal rights. The speech provoked an ugly reaction from the crowd, and there were threats of violence if the police did not act. Because of the feeling of members of the crowd both for and against the speaker, the officers finally

"stepped in to prevent it from resulting in a fight" after Feiner had been speaking nearly half an hour. At first the police officers approached Feiner, not for the purpose of arresting him, but to get him to break up the crowd. They asked Feiner to get down from his box, but he continued to talk despite continued requests. Meanwhile, the crowd pressed in closer around the box and the danger of a breach of the peace as a result of the speech increased. The police finally arrested Feiner, who was later charged with disorderly conduct for ignoring and refusing to heed and obey reasonable police orders issued to regulate and control the crowd and to prevent a breach of the peace. The trial court and reviewing courts found that the police officers were justified in taking action to prevent a breach of the peace. The Supreme Court found that Feiner was not arrested or convicted for the making or the content of his speech, but rather for the reaction which it actually engendered. The court quoted Cantwell v. State of Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), to the effect that "When clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order, appears, the power of the State to prevent or punish is obvious." The Court added, "This Court respects, as it must, the interest of the community in maintaining peace and order on its streets." Significant in the Supreme Court's affirmation of the trial court was its awareness of "the imminence of greater disorder coupled with petitioner's deliberate defiance of the police officers."

Both in Feiner and the instant case, an ugly situation threatening violence had arisen as a result of the exercise of the constitutional right of free speech by petitioners. Indeed, in the instant case some violence had already occurred. In neither case did the petitioners face prosecution merely for exercising their constitutional right of free speech. In the Edwards case, on the other hand, the petitioners were prosecuted for breach of

the peace even though there was no threat of violence involved. The Supreme Court concluded that the arrest and prosecution in Edwards, unlike those in Feiner, were aimed directly at depriving petitioners of their constitutional rights of free speech and assembly, and not merely at preventing disorder as the result of the exercise by petitioners of their constitutional rights.

 The right of free speech is not an unlimited, unqualified right, but the societal value of speech must, on occasion, be subordinated to other values and considerations. Dennis v. United States, 341 U.S. 494, 503, 71 S.Ct. 857, 95 L.Ed. 1137 (1951). The existence of constitutional protection of picketing as free speech depends on the balance struck by the state between picketing that involves more than publicity and competing interests of state policy. Wooten v. Ohler, 303 F.2d 759 (CA 5, 1962). Picketing involves more than free speech, since the very presence of a picket line may induce action irrespective of the ideas that are disseminated, and those aspects of picketing make it the subject of restrictive regulation. Fruit and Vegetable Packers & Warehousemen, Local 760, v. N. L. R. B., 113 U.S.App.D.C. 356, 308 F.2d 311, 316 (1962). Where defendants, by picketing the main entrance to the United Nations and thereby blocking that entrance, were violating the penal code section prohibiting disorderly conduct, arrest of defendants was not a violation of defendants' right of freedom of speech and assembly. People v. Carcel, 2 Misc.2d 827, 150 N.Y. S.2d 436 (1956).

 The foregoing citations indicate that the constitutional right to picket does not extend to compulsory toleration of disorder and breach of the peace as a result of the exercise of the right. In situations where violence is imminent, police officers do not infringe on the constitutional rights of picketers by arresting them to avert a breach of the peace or further disorders. It follows that picketers who resist the police in such situations are not acting in the exercise of their constitutional rights. In short,

the act of petitioners in the instant case of resisting police officers attempting to preserve the peace was not an act under authority of the first and fourteenth amendments.

The question remains whether the act of petitioners was under color of authority derived from the constitution, within the meaning of 28 U.S.C. § 1443(2). The language of section 1443(2) has been construed in recent years in only three cases: State of Arkansas v. Howard, 218 F. Supp. 626 (D.C.Ark.1963), cited by petitioners, and also the very recent cases of City of Clarksdale v. Gertge, 237 F.Supp. 213 (D.C.Miss.1964) and People of State of New York v. Galamison, 342 F.2d 255 (CA 2, 1965). The Howard case very properly rejects the view that the mere claim of a petitioner to have been acting "under color of authority" of the constitution is sufficient in itself to make his state prosecution removable under section 1443(2). In Howard, the petitioner, who was escorting some children home from a school recently integrated by court order, became involved in a fight and was charged subsequently with assault with intent to kill. Petitioner attempted to remove his prosecution by contending that he was only implementing the court's order in escorting the children from school and, therefore, acting under color of authority of the court order. The court chose not to accept petitioner's own characterization of his acts as a basis for removal, but made an independent examination of the facts. The court concluded upon its own analysis of the situation that petitioner was not in fact acting under color of authority derived from any law providing for equal rights, despite petitioner's own claim to the contrary.

In City of Clarksdale v. Gertge, supra, the court proposed that "removal is not available under subsection (2) unless the act for which the state prosecution is brought was done in at least a quasi-official capacity derived from a law providing for equal rights." In support of its holding, the court argued, "The mere exercise of rights created or protected by federal civil rights statutes does not

spread a cloak of immunity from state prosecution over persons who, by the acts involved in such exercise of their equal civil rights, also violate state law." The court argued further, "Obviously, the legal profession has regarded subsection (2) as being unavailable to private individuals who are being prosecuted for acts which are claimed to amount to exercise of their federal equal civil rights."

However, in People of State of New York v. Galamison, supra, the Second Circuit Court of Appeals, in denying removal under Section 1443(2), declined to decide whether Section 1443(2) was limited in its coverage to federal officers, or whether it also included private citizens' exercising their equal civil rights. The court concluded that color of authority "refers to a situation where the lawmakers manifested an affirmative intention that a beneficiary of such a law should be able to do something and not merely to one where he may have a valid defense or be entitled to have civil or criminal liability imposed on those interfering with him."

It appears to the court that Section 1443(2) might very properly be construed to include private individuals, since the statute is not by its express terms limited to persons acting in an official capacity.

Although Section 1443(2) does not by its express terms require that petitioners must have had actual authority derived from some law providing for equal rights in order for their state prosecution to be removable, it would seem only reasonable that the court, in construing this statute, should find at least a causal relation between the law involved and the petitioners' acts. It should at least appear that petitioners were in fact acting in rational reliance upon the law at the time of the incident rather than from some other motives. Otherwise, any state prosecution would be removable where the petitioners claimed in their petition to have had a constitutional right to commit the offense charged. Under this untenable view, state prosecution for any abuse of free speech such as publishing obscene or libelous material, or blocking traffic by a picket line, would be removable to federal court.

Reasonable reliance on a law providing for equal rights is the very least that the phrase "color of authority" can properly be construed to mean, and the phrase may well bear an even more restricted meaning in the course of further judicial interpretation of Section 1443(2). In any event, this court need not decide the precise scope of the language "color of authority" as applied to the instant case, since there is an alternative basis for its disposition.

A fair reading of the petition in the instant case leads to the conclusion that petitioners had no actual authority under the constitution to resist the officers under the circumstances and that the officers did not exceed their authority in arresting the petitioners to preserve the peace. However, assuming, hypothetically, that the officers had exceeded their authority or had infringed the petitioners' constitutional rights, the act of resisting arrest would still not constitute an act under color of authority derived from any law providing for equal rights, since the right to resist an illegal arrest, if a right at all, is merely a common law right, United States v. Di Re, 332 U.S. 581, 594, 68 S.Ct. 222, 92 L.Ed. 210 (1948); People v. De Meaux, 194 Mich. 18, 28, 160 N. W. 634 (1916); Anno. 48 A.L.R. 746, 748; cf. People v. Clements, 68 Mich. 655, 657–658, 36 N.W. 792 (1888), not guaranteed by the constitution or any statute. Thus, the language of Section 1443(2) does not permit removal of the instant case to federal court, since the act of resisting arrest for which petitioners face state prosecution is not in any sense "derived from any law providing for equal rights." On this basis alone, the motion to remand the case must be granted.

Further, in view of the allegations of the removal petition that picketing had proceeded peacefully for an hour without interference by the police, and was in the process of breaking up at the time of the altercation with the firemen which led to petitioners' arrest, it appears that peti-

tioners had no reasonable grounds to believe they were being arrested for picketing rather than as a result of the altercation. And since petitioners apparently did not intend to continue their picketing in any event, this court cannot accept their claim that they resisted arrest in reliance upon their constitutional right to picket. In other words, the petition does not satisfactorily establish even a reasonable claim of color of authority derived from the Constitution. The petition does not state facts sufficient to support removal under the language of Section 1443(2), upon which the removal petition is based, and, therefore, the motion to remand must be granted.

■ As for the alternative civil rights action under 42 U.S.C. § 1983 for an injunction against the state prosecution, the motion to dismiss must also be granted. The petition seeks relief from this court's acting as a court of equity. However, it has long been established that a federal court of equity will not enjoin state prosecutions except in unusual cases where irreparable harm will otherwise result. Fenner v. Boykin, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927 (1926). For example, Jehovah's Witnesses were not entitled to an injunction to restrain prosecution of plaintiffs for violation of allegedly unconstitutional ordinances interfering with plaintiffs' religious liberties, where there was no showing of irreparable injury, and there was no reason to believe that state courts would not protect plaintiffs' rights. Whisler v. City of West Plains, Mo., 137 F.2d 938 (CCA 8, 1943). In the instant case, there has been no allegation that irreparable harm will result from state prosecution, and in view of the fact that petitioners have already been acquitted in Ann Arbor Municipal Court on a misdemeanor charge of obstructing the public way growing out of the same incident, there is no reason to believe that the atmosphere in Ann Arbor is so prejudicial to petitioners that the State court will not protect their rights.

■ Since the motion to dismiss must be granted for the reasons above stated,

it is unnecessary to discuss the other grounds asserted in support of such motion. In the absence of any allegation of irreparable harm, this court has no jurisdiction to grant injunctive relief against the state prosecution. An appropriate order may be submitted.